UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN RUFFINO and MARTHA RUFFINO, Husband and Wife, | ) ) ) |
| Plaintiffs, | ) Civil Action No.: 3:17-cv-00725 ) |
| v. | ) Jury Demand ) |
| DR. CLARK ARCHER and HCA HEALTH SERVICES OF TENNESSEE, INC. d/b/a STONECREST MEDICAL CENTER, | ) Judge Crenshaw ) Magistrate Judge Newbern ) ) |
| Defendants. | ) |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT STONECREST'S MOTION FOR SUMMARY JUDGMENT

The Plaintiffs, through undersigned Counsel, respectfully submit this Response in Opposition to Defendant StoneCrest's Motion for Summary Judgment. The Plaintiff has also filed, and relies upon the following:

- Plaintiffs' Response to Defendant's Statement of Undisputed Material Facts (Dkt. 47);
- The Affidavit of Dr. Troy Pope (Dkt. 46-1);
- The Affidavit of Dr. Alfred Callahan (Dkt. 46-2);
- Excerpts from the Deposition of Plaintiff John Ruffino (Dkt. 46-3);
- Excerpts from the Deposition of Carol McCulloch, R.N. (Dkt. 46-4); and
- Excerpts from the Deposition of Robert Bromley, R.N. (Dkt. 46-4).[1]

---

[1] Additional excerpts of Nurse Bromley's Deposition, which were not attached to filed Plaintiffs' December 28, 2017 Notice of Filing (Dkt. 46) are attached hereto as **Exhibit 1**.

This Court should deny the Defendant's Motion for Summary Judgment because Plaintiffs have produced competing expert testimony on the issues of breach and causation. The jury, not this Court, must decide which side's experts to ultimately credit on these issues.

## MOTION FOR SUMMARY JUDGMENT STANDARD

When considering a motion for summary judgment, the trial court must determine whether there are "no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In doing so, the court must construe all evidence, and draw all reasonable inferences, in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

"When determining whether the evidence is sufficient, the trial court should not weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury." *J.C. Wyckoff & Assoc., Inc. v. Standard Fire Ins. Co*., 936 F.2d 1474, 1487 n.19 (6th Cir. 1991).

Summary judgment should not be granted when there is competing expert proof.[2] *Cadmus v. Aetna Cas. & Sur. Co.,* 1996 U.S. App. LEXIS 29443, *6, 1996 WL 652769 (6th Cir. Nov. 7, 1996). Competing expert opinions require a "'classic battle of the experts' [at trial] and it is up to a jury to evaluate what weight and credibility each expert opinion deserves." *Id.; see also In re Bendectin Products Liability Litigation*, 732 F. Supp. 744, 749 (E.D. Mich. 1990) ("When confronted with a classic battle of the experts, the jury must decide the victor. The Court is

---

[2] This is particularly true when the issue is one that can *only* be established or rebutted with expert testimony, as is the case here with the standard of care and causation. *See* Tenn. Code Ann. § 29-26-115.

unwilling to invade the province of the jury and evaluate what weight and credibility the expert opinions deserve.").

## INTRODUCTION

This is a complex medical malpractice case. When this case is ultimately tried before a jury, each of the Parties will present their respective medical experts to testify about the appropriateness of the medical care the Defendants provided Mr. Ruffino, as well as the consequences that care had (or did not have) upon the Plaintiffs. The jury will get into the weeds of the medical issues, and determine which of the experts to credit.

The Court's task at this juncture is much simpler. The Court need only determine whether the Plaintiff has basic medical expert testimony for the jury to consider on each essential element. The Plaintiffs have easily satisfied this burden through the detailed Affidavits of their qualified medical experts, Dr. Troy Pope (Dkt. 46-1), and Dr. Alfred Callahan (Dkt. 46-2).

## DISPUTED MATERIAL FACTS

On the morning of February 17, 2016 at 0948, Mr. Ruffino presented to the ER at StoneCrest Medical Center because he was feeling dizzy. However, Mr. Ruffino had not experienced symptoms of a stroke that morning.[3] [4]

Mr. Ruffino was evaluated at 09:58 by StoneCrest employee and nurse Carol McCulloch, RN (an ER nurse with over 30 years' experience). Deposition of Nurse McCulloch (Dkt. 46-4) at p. 11:7-12:23, 27:18-21. Nurse McCulloch did not observe a single neurological deficit in Mr. Ruffino during this initial assessment. *Id.* at p. 28:23-29:9. Mr. Ruffino was not having a stroke at that time. *Id.* at p. 25:19-25:23, 30:20-25.

---

[3] This fact is disputed by the Parties. *See* Plaintiffs' Response to Defendant's Statement of Disputed Material Fact, #13 (Dkt. 47).
[4] StoneCrest admits that Mr. Ruffino's presenting symptom of dizziness is not indication of a stroke, or to initiate stroke treatment. Dkt. 39 at p. 8-9.

At 10:00, 10:15, 10:30, 10:45, 11:10, and 12:00, StoneCrest employee and nurse Robert Bromley, R.N. performed neurological checks on Mr. Ruffino. During each of these checks, Nurse Bromley observed and documented that Mr. Ruffino was neurologically normal at each of these times. Deposition of Nurse Bromley (Dkt. 46-5) at p. 15:6-16:8, 55:19-57:17, 58:12-17, 64:10-15, 74:15-22, 77:17-78:8, 83:15-19, 86:10-14, 80:4-7, 90:16-91:1, 92:4-21, 94:16-20, 95:1-12, 95:14-24, 98:12-21, 104:1-9. Mr. Ruffino was not having a stroke at 10:00-12:00. *Id.*

Defendant Dr. Archer first saw Mr. Ruffino at 12:20. During that evaluation, Mr. Ruffino demonstrated *new* neurological symptoms of a possible stroke, including slow slurred speech, dysphasia, and right arm weakness – each of which was not theretofore observed by Nurse McCulloch and/or Nurse Bromley from 9:53 through 12:00. Affidavit of Dr. Affidavit of Dr. Pope, ¶¶ 11-12; Affidavit of Dr. Callahan at ¶¶ 11-12.

When Dr. Archer first observed Mr. Ruffino demonstrating new neurological symptoms of a possible stroke at 12:20, Mr. Ruffino's "last known normal" was 12:00.[5][6] By 13:00, (1) a code stroke had been called due to Mr. Ruffino's new neurological changes (suggesting stroke); and (2) Nurse Bromley had communicated to Dr. Archer that Mr. Ruffino had been "neurologically normal" from 10:00 to 12:00. Deposition of Nurse Bromley, p. 108:23-109:19, 122:11-123:9.[7]

---

[5] Affidavit of Dr. Callahan, ¶ 13, 15; Affidavit of Dr. Pope, ¶ 10-12, 18; Deposition of Nurse McCulloch at p. 7:13-8:9, 19:6-10, 22:6-10, 23:1-24:13, 25:8-26:23, 28:19-29:9, 30:20-25; Deposition of Nurse Bromley at p. 15:6-16:8, 55:19-57:17, 58:12-17, 64:10-15, 74:15-22, 77:17-78:8, 83:15-19, 86:10-14, 80:4-7, 90:16-91:1, 92:4-21, 94:16-20, 95:1-12, 95:14-24, 98:12-21, 104:1-9.

[6] This issue is disputed by the Parties, and their respective experts. The Defendant's experts opine in their affidavits that Mr. Ruffino's last known normal was the evening of February 18, 2016. This testimony is based on the factual premise that Mr. Ruffino woke up with stroke symptoms (which he denies). *See* Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, #24 (Dkt. 47).

[7] These excerpts were not included with Plaintiff's Notice of Filing (Dkt. 46-5). They are attached hereto as **Exhibit 1**.

**The Parties, and their respective medical experts, disagree about what the standard of care required of Dr. Archer at that point, and what consequences befell Mr. Ruffino due to Dr. Archer's failure to timely initiate appropriate treatment for Mr. Ruffino's stroke.**

Dr. Pope – the Plaintiffs' standard of care expert – opines that the applicable standard of care required Dr. Archer to start appropriate stroke treatment by administering tPA, and arranging for transfer of Mr. Ruffino to a stroke center for additional treatment, including an endovascular thrombectomy. Affidavit of Dr. Pope, ¶ 12. Dr. Pope and Dr. Callahan (Plaintiff's causation expert) both opine that had Dr. Archer started Mr. Ruffino on tPA and timely arranged for transfer to a stroke center for additional treatment, including endovascular thrombectomy, Mr. Ruffino would have had a better outcome. Affidavit of Dr. Pope, ¶ 15-19; Affidavit of Dr. Callahan, ¶¶ 11-12, 15.

By contrast, the Defendants' opinion witnesses opine that Dr. Archer did not violate any standard of care, and did not cause any injury to Mr. Ruffino, when failing to timely treat his stroke because the time of onset and site of vascularization of Mr. Ruffino's stroke inevitably prevented any intervention from being successful. The Plaintiff's medical experts dispute this analysis.

First, the Plaintiffs' experts conclude that Mr. Ruffino's "last known normal" was 12:00, not the evening of February 16, 2016 (as the Defendants' experts assume). Affidavit of Dr. Pope, ¶ 10-12; Affidavit of Dr. Callahan, ¶¶ 10-12, 15. Their finding on this issue is supported by the sworn deposition testimony of the Plaintiff, and both of the StoneCrest nurses who evaluated the Plaintiff's neural status (repeatedly) during the time in question.[8] The Defendant's experts do not

---

[8] Affidavit of Dr. Pope, ¶ 18; Affidavit of Dr. Callahan, ¶ 15; *see* Deposition of John Ruffino at p. 47:4-50:3, 62:10-63:10, 75:13-19, 76:12-19; Deposition of Nurse McCulloch at p. 7:13-8:9, 19:6-10, 22:6-10, 23:1-24:13, 25:8-26:23, 28:19-29:9, 30:20-25, Deposition of Nurse Bromley at p. 15:6-16:8, 55:19-57:17, 58:12-17, 64:10-15, 74:15-22, 77:17-78:8, 83:15-19, 86:10-14, 80:4-7, 90:16-91:1, 92:4-21, 94:16-20, 95:1-12, 95:14-24, 98:12-21, 104:1-9.

consider that information, and instead rely upon inconsistent information from an unsworn medical record entry made by a subsequent provider at another facility on the day after the events in question (February 18, 2016).[9] The jury will have to determine which proof to credit on this issue.

Second, the Plaintiffs' experts opine that *even if* Mr. Ruffino's stroke symptoms had onset at 08:30, the standard of care still would have required Dr. Archer to begin administration of tPA and arrange for transfer to a stroke center. Affidavit of Dr. Pope, ¶ 16; Affidavit of Dr. Callahan, ¶ 13 (opining that doing so would have led to a better outcome). The Plaintiffs' experts opine that the window of effectiveness for tPA / endovascular thrombectomy treatment is 6-8 hours, not 3. Affidavit of Dr. Pope, ¶ 15; Affidavit of Dr. Callahan, ¶ 12. These opinions are based on more recent peer-reviewed literature than the studies relied upon by Defendants' opinion witnesses. Affidavit of Dr. Pope, ¶ 17, Exhibit 2 thereto; Affidavit of Dr. Callahan, ¶ 14, Exhibit 2 thereto. This will also be a critical point for the jury to consider at trial.

Finally, both of the Plaintiff's experts agree that the site of vascularization where the stroke occurred (in the M1 or M2 segment) is a red herring, and that Mr. Ruffino have had a better outcome from his stroke if he had received timely and appropriate treatment, regardless of the site of vascularization. Affidavit of Dr. Pope, ¶ 17; Affidavit of Dr. Alfred Callahan, ¶ 14. The jury will also have to decide which expert(s) to credit on this issue.

## ARGUMENT

The "standard of care" and "causation" elements of a health care liability claim can only be established and/or rebutted with medical expert testimony. *See* Tenn. Code Ann. § 29-26-115. As such, Tennessee courts frequently observe that "medical malpractice [cases] often present the

---

[9] Defendant's Statement of Undisputed Material Facts, ¶ 13, Affidavit of Dr. Dodds, ¶ 14, Centennial Medical Center 001 and 017.

jury with a 'battle of the experts' in which the jurors must decide which expert to believe." *Hall v. Randolph*, 2014 Tenn. App. LEXIS 14, *10, 2014 WL 127313 (Tenn. Ct. App. 2014).

In medical malpractice cases, it is up to the jury to resolve conflicts between the competing opinions of the parties' medical experts based on the following jury instructions:

> **T.P.I.—CIVIL 6.18 Standard of Medical Care Determined by Expert Testimony**
>
> It is your obligation to determine the recognized standard of acceptable professional practice in defendant's profession for this or a similar community. In making this determination, you may consider only the opinions of the physicians, including the defendant, who have testified concerning this standard. Consider each opinion and the reasons given for the opinion, as well as the qualifications of the witnesses, giving each opinion the weight you believe it deserves.
>
> **T.P.I. —CIVIL 2.30 Expert Testimony—Determination of Weight**
> Usually witnesses are not permitted to testify as to opinions or conclusions. However, a witness who has scientific, technical, or other specialized knowledge, skill, experience, training, or education may be permitted to give testimony in the form of an opinion. Those witnesses are often referred to as "expert witnesses."
>
> You should determine the weight that should be given to each expert's opinion [and resolve conflicts in the testimony of different expert witnesses]. You should consider:
>
> 1. The education, qualifications, and experience of the witness[es]; and
> 2. The credibility of the witness[es]; and
> 3. The facts relied upon by the witness[es] to support the opinion; and
> 4. The reasoning used by witness[es] to arrive at the opinion.
>
> You should consider each expert opinion and give it the weight, if any, that you think it deserves. You are not required to accept the opinion of any expert.

*See also Cadmus* at *6 (Competing expert opinions present a "'classic battle of the experts' and it is up to a jury to evaluate what weight and credibility each expert opinion deserves.").

Given this context, motions for summary judgment on the "standard of care" or "causation" are "generally inappropriate in professional malpractice cases," unless "there is no expert response

to an affidavit by an expert." *Gambill v. Middle Tennessee Medical Center, Inc.*, 751 S.W.2d 145, 146 (Tenn. Ct. App. 1988).[10]

To create a genuine dispute of issue of fact on the issue of breach or causation, a plaintiff need only produce competing medical expert testimony that "has some legally-acceptable basis from which its conclusions could be rationally drawn." *Church v. Perales*, 39 S.W.3d 149, 166, (Tenn. Ct. App. 2000). Once such testimony is produced, it is beyond the task of the trial court to "assay the expert's credibility nor determine the evidentiary weight that should be given to the experts' opinion." *Id.*

Nevertheless, Tennessee courts have observed that it has now become "commonplace" for health care provider defendants to "file a motion for summary judgment accompanied by their own affidavit stating that their conduct neither violated the applicable standard of care nor caused injury." *McDaniel v. Rustom*, 2009 Tenn. App. LEXIS 182, *17-18, 2009 WL 1211335 (Tenn. Ct. App. May 5, 2009); *Kenyon v. Handal*, 122 S.W.3d 743, 758 (Tenn. Ct. App. 2003). Since physician defendants "often file their summary judgment motions before much discovery has occurred," plaintiffs generally can only respond by filing an affidavit from their own retained medical expert. *Kenyon*, 122 S.W.3d at 758.

Although such motions are easily defeated when the plaintiff produces an affidavit from their own competing medical expert, physician-defendants continue to file these motions primarily for two (2) reasons:

1. Even when these motions have no chance of succeeding, they "forc[e] [plaintiffs] to reveal the identity of their testifying experts early in the litigation." *Kenyon*, 122 S.W.3d at 758.

---

[10] The Defendant cites *Bowman v. Henard*, 327 S.W.3d 53 (Tenn. 1977) for the surprising proposition that health care liability cases are "particularly amenable to resolution by summary judgment," *see* Dkt. 39 at p. 7, but review of the supporting authority makes clear that this is only true "in the absence of proper responsive proof by affidavit." 327 S.W.3d at 55.

2. These motions create a potential trap for unwary plaintiffs because expert affidavits must comply with a series of requirements from both Tenn. R. Civ. P. 56.06 and Tenn. Code Ann. § 29-26-115. *See Church v. Perales,* 39 S.W.3d 149, 166 (Tenn. Ct. App. 2000). Rule 56.06 requires affidavits (1) to be based on personal knowledge (or appropriate review of materials if the affiant is an expert, see TRE 703), (2) to set forth facts as would be admissible in evidence, and (3) to demonstrate that the affiant is competent to testify to the matters therein. Tenn. Code Ann. § 29-26-115 imposes the following additional requirements on medical expert affidavits:

> In medical malpractice cases, Tenn. Code Ann. § 29-26-115 imposes five other substantive requirements on expert affidavits. **[1]** The affiant must demonstrate that he or she meets the geographic and durational residence and practice requirements. **[2]** the affiant must demonstrate that he or she practices in a profession or specialty that makes the affiant's opinion relevant to the issues in the case. **[3]** the affiant must demonstrate that familiarity with the recognized standard of professional practice in the community where the defendant practices or in similar communities. **[4]** the affiant must give an opinion concerning whether the defendant physician met or failed to meet the relevant standard of professional practice. **[5]** the affiant must opine whether the defendant physician's negligence more likely than not caused the patient injuries that he or she would not otherwise have suffered.

*Church,* 39 S.W.3d at 166.

In opposition to StoneCrest's Motion for Summary Judgment, the Plaintiffs have created a genuine dispute of material fact on the issue of the standard of care and causation through the Affidavits of two of the Plaintiffs' medical experts, Dr. Pope, and Dr. Callahan. These Affidavits satisfy Plaintiff's burden of production because it complies with each of the requirements of Tenn. R. Civ. P. 56.06 and Tenn. Code Ann. § 29-26-115:

| Source | Requirement | Relevant Affidavit Testimony Addressing Same |
|---|---|---|
| **Rule 56.06** | Based on personal knowledge (and/or appropriate materials for experts). | Affidavit of Dr. Pope, ¶¶ 4, 6, 8-9<br>Affidavit of Dr. Callahan, ¶¶ 4, 6, 8-9 |

| Rule 56.06 | Testimony must be otherwise admissible. | *See* Affidavit of Dr. Pope ¶ 18; Affidavit of Dr. Callahan, ¶ 15 (all opinions are to a reasonable degree of medical probability) |
|---|---|---|
| Rule 56.06 | Affiant must be competent to testify to matters therein. | *See* Exhibit 1 to the Affidavit of Dr. Pope and Exhibit 1 to the Affidavit of Dr. Callahan for those experts' impressive and relevant qualifications. |
| HCLA 29-26-115 | Geographic / Practice Requirement. | *See* Affidavit of Dr. Pope, ¶¶ 2, 6-7 |
| HCLA 29-26-115 | Practices a Specialty that Makes Opinions Relevant. | *See* Affidavit of Dr. Pope, ¶¶ 2, 5-8 |
| HCLA 29-26-115 | Familiarity with Standard of Care in D's Community or Similar Community. | *See* Affidavit of Dr. Pope, ¶¶ 8 (familiar with the standard of care in Laurel County, KY – a medical community similar to Smyrna, Rutherford County, TN). |
| HCLA 29-26-115 | Opinion on Standard of Care. | *See* Affidavit of Dr. Pope, ¶¶ 12-14, 16-18. |
| HCLA 29-26-115 | Opinion on Causation. | *See* Affidavit of Dr. Pope, ¶¶ 15-18; Affidavit of Dr. Callahan, ¶¶ 10-16. |

With the materials contemporaneously filed with this Response, including the Affidavits of Dr. Pope and Dr. Callahan, the Plaintiffs have satisfied their threshold burden to demonstrate a genuine dispute of fact on the issues of (1) breach of the standard of care and (2) causation, with respect to Defendant StoneCrest.

## **CONCLUSION**

The Parties' competing expert testimony on the issues of breach and causation demonstrate a genuine dispute of material fact that requires a jury trial of the Plaintiffs' health care liability claims against StoneCrest. Therefore, Defendant's Motion for Summary Judgment should be denied.

**RESPECTFULLY SUBMITTED,**

  s/ Mark Hammervold
**Brian Cummings, #19354**
**Brian P. Manookian, #26455**
**Afsoon Hagh, #28393**
Cummings Manookian PLC
45 Music Square West
Nashville, Tennessee 37203
(615) 266-3333 (phone)
(615) 266-0250 (fax)
bcummings@cummingsmanookian.com
bmanookian@cummingsmanookian.com
afsoon@cummingsmanookian.com

**Mark Hammervold, #31147**
Hammervold, PLC
315 Deaderick Street, Suite 1550
Nashville, TN 37238
(615) 928-2466 (phone)
(615) 928-2264 (fax)
mark@hammervoldlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that I served all parties in this matter through counsel of record listed below with the foregoing by CM/ECF on December 28, 2017:

| | |
|---|---|
| James E. Looper, Jr. | C.J. Gideon, Jr. |
| Hall Booth Smith, PC | J. Blake Carter |
| Fifth Third Center | Gideon Cooper & Essary |
| 424 Church Street, Suite 2950 | 315 Deaderick Street, Suite 1100 |
| Nashville, TN 37219 | Nashville, TN 37238 |
| (615) 313-9911 (phone) | (615) 254-0400 (phone) |
| (615) 313-8008 (fax) | (615) 254-0459 (fax) |
| jlooper@hallboothsmith.com | cj@gideoncooper.com |
| | blake@gideoncooper.com |
| *Counsel for the Defendant* | |
| *Dr. Clark Archer* | *Counsel for the Defendant StoneCrest* |

  s/ Mark Hammervold
**Mark Hammervold**