UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHN RUFFINO and MARTHA RUFFINO, Husband and Wife, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No.: 3:17-cv-00725 |
| DR. CLARK ARCHER and HCA HEALTH SERVICES OF TENNESSEE, INC. d/b/a STONECREST MEDICAL CENTER, | ) ) ) ) | Jury Demand Judge Crenshaw Magistrate Judge Newbern |
| Defendants. | ) | |

## REPLY BRIEF IN SUPPORT OF HCA HEALTH SERVICES OF TENNESSEE, INC.'S MOTION FOR SUMMARY JUDGMENT

HCA Health Services of Tennessee, Inc. d/b/a StoneCrest Medical Center ("StoneCrest"), in compliance with the Initial Case Management Order,[1] files this Reply Brief in Support of its Motion for Summary Judgment. Summary judgment is in order.

### UNDISPUTED FACTS ENTITLE STONECREST TO SUMMARY JUDGMENT

Whether Mr. Ruffino's left middle cerebral artery was closed by a long-standing occlusion - long before he presented to Stonecrest on the morning of February 17, 2016 - is *the, central,* material fact. If so, tissue plasminogen activator (tPA), and endovascular thrombectomy, alone, *or* in combination, would not restore blood flow.[2]

Jodi Dodds, M.D. is the director of the Duke University Hospital Regional Stroke Center. She is an assistant professor of Neurology in the Division of Stroke and

---

[1] Doc. No. 20.
[2] Affidavit of Jodi Dodds, M.D., Doc. 41-2, at ¶16 ("On February 17, 2016, given the long-standing complete, or nearly complete occlusion, in the M1 segment of Mr. Ruffino's left MCA, a thrombectomy would not have been appropriate. A thrombectomy is not indicated to excavate a fixed lesion. Tissue plasminogen activator was not indicated and would not have opened that vessel.").

Neurocritical Care at Duke University Medical Center.[3] Dr. Dodds is qualified to offer admissible opinions on the issues of standard of care and causation.[4]

John Ruffino underwent a diagnostic test known as a Magnetic Resonance Angiogram (MRA) on December 23, 2015 at University Medical Center.[5]

Dr. Dodds reviewed that critically important diagnostic study.[6] That test confirmed blockage in Mr. Ruffino's left middle cerebral artery (MCA), which was either completely occluded, or 99% stenosed, such that there was no appreciable flow of blood through that major vessel two (2) months before he first presented to Stonecrest.[7]

Troy Pope, M.D. and Alfred Callahan, M.D.[8] did not review the Magnetic Resonance Angiogram study of December 23, 2015. Neither witness reviewed the affidavit of Dr. Dodds.[9] *Not once* does Dr. Pope or Dr. Callahan address Dr. Dodds' material opinion that "no intervention was appropriate or indicated for Mr. Ruffino on the morning of February 17, 2016 given that the M1 segment of his left MCA had been completely occluded or significantly stenosed since at least December 23, 2015."[10]

The Plaintiffs' claim that the unpublished *Cadmus* decision disables *any* motion for summary judgment with the simple expedient of filing an affidavit, irrespective of content, or qualifications of the witness. That simplistic hyperbole is incorrect.

---

[3] Doc. 41-2 at page 7.
[4] Plaintiffs' response to Undisputed Statement of Material Fact #19, Doc. 47, at page 7.
[5] Response to Statement of Undisputed Material Fact # 3, Doc. 47, at page 3.
[6] Plaintiff's counsel failed to request or obtain these studies during presuit. StoneCrest requested them in October 2017 and free copies of these studies were provided to Plaintiff in early November 2017.
[7] Response to Statement of Undisputed Material Facts #4-6, Doc. 47, at pages 3-4.
[8] Opinion witnesses now offered by the Plaintiffs.
[9] Troy Pope, M.D., at ¶4, Doc. 46-1, at pages 1-2; Alfred Callahan, M.D., at ¶4, Doc. 46-2, at pages 1-2.
[10] Affidavit of Jodi Dodds, M.D., Document 41-2, at paragraph 16, page 4.

A plaintiff cannot survive a pending motion for summary judgment with an alleged expert's conclusory opinion on the ultimate issue (here, whether Mr. Ruffino's pre-existing occlusion excluded tPA or a thrombectomy as a possible treatment option).[11]

The opponent must "come forward with specific facts" and show there is a genuine issue for trial.[12] To make out a *genuine* issue, a plaintiff must present probative *evidence* tending to support her version of the facts, upon which a reasonable jury could return a verdict for her.[13] Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.[14]

A party opposing a motion for summary judgment is not at liberty to ignore inconvenient material facts.[15] Submitting affidavits from physicians meeting minimal state competency standards is *not* enough.[16] When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a verdict.[17]

Despite the submission of a response to the StoneCrest Motion for Summary Judgment, there remains no genuine issue as to *the defining* material fact - Mr.

---

[11] *Hirsch v. CSX Transp.*, Inc., 656 F.3d 359, 363 (6th Cir. 2011)(noting that even when an expert's evidence is ruled admissible under the *Daubert* standards, a District Court remains free to decide that the evidence amounts to no more than a scintilla; *see also Williams v. Ford Motor Co.*, 187 F.3d 533, 543-544 (6th Cir. 1999)("We are not willing to allow the reliance on a bare ultimate expert conclusion to become a free pass to trial every time that a conflict of fact is based on expert testimony...").

[12] *Chappell v. City Of Cleveland*, 585 F.3d 901, 912 (6th Cir. 2009). Local Rule 56.01(c) is to the same effect. The opponent of the motion for summary judgment must *demonstrate* (not claim) the fact is disputed, "supported by a specific citation to the record." Implicit in that requirement is attention to the record as a whole. Plaintiffs cannot elect to ignore inconvenient facts material to the case.

[13] *Chappell*, 585 F.3d at 913 (emphasis in original); *Webb v. U.S.*, 789 F.3d 647, 661 (6th Cir. 2015).

[14] *Hirsch*, 656 F.3d at 361 (6th Cir. 2011).

[15] Local Rule 56(e). Upon a failure to properly address another party's assertion of fact, the Court may consider the fact undisputed, and grant summary judgment.

[16] *Pride v. BIC Corp.* 218 F.3d 566, 575 (6th Cir. 2000)(["I[n determining whether an issue of fact is genuine and material, the Court must decide whether the evidence is such that 'reasonable jurors could find by a preponderance of the evidence that the non-moving party is entitled to a verdict, or whether the evidence is so one-sided that the [moving party] must prevail as a matter of law.'").

[17] *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (U.S. 1993).

Ruffino's left MCA was blocked long before he presented to StoneCrest Medical Center on February 17, 2016, and there was nothing that could be done to change his condition. Summary judgment should be entered in favor of Stonecrest Medical Center.

## "LIKELY BETTER" FALLS SHORT OF ADEQUATE PROOF OF CAUSATION

Tennessee rejects claims against health care providers based on loss of a chance for a better or more favorable outcome.[18] Permitting recovery for loss of a chance at a favorable outcome is "not consistent with our standard for causation."[19]

Chief Justice Riley of the Supreme Court of Michigan accurately stated the public policy of the state of Tennessee:[20]

> "If the defendant's acts did not actually cause the plaintiff's injury, then there is no rational justification for requiring the defendant to bear the cost of plaintiff's damages….health care providers [should not] find themselves defending cases simply because a patient fails to improve or where serious disease processes are not arrested because another course of action could possibly bring a better result."

The affidavit of the imminently qualified, and fully informed, Jodi Dodds, M.D. offers the unqualified opinion that no therapeutic option (tPA or referral for an endovascular procedure) was indicated for Mr. Ruffino on February 17, 2016. Her opinion is grounded on the chronic occlusion of Mr. Ruffino's left MCA readily apparent on the December 23, 2015, MR Angiogram performed at University Medical Center.[21]

In response, on the critical issue of causation, the high water mark[22] from both Troy Pope, M.D. and Alfred Callahan, M.D. is that Mr. Ruffino would have had "a *better*

---

[18] *Kilpatrick v. Bryant*, 868 S.W.2d 594, 602-603 (Tenn. 1993).
[19] *Kilpatrick*, 868 S.W.2d at 603.
[20] The opinion notes that Riley's comments "reflects our sentiments in this regard." 868 S.W.2d at 603.
[21] Affidavit of Jodi Dodds, M.D., Document 41-2, at Paragraph 16
[22] It is implausible to suggest, post-*Daubert*, that parties will initially present less than their best expert evidence in the expectation of a second chance should their first try fail. *Weisgram v. Marley Co.*, 528 U.S. 440, 455, 120 S.Ct. 1011, 1021 (2000).

*outcome"*[23] if Dr. Archer elected to treat Mr. Ruffino's stroke, which none of the defendant's caused, in a different manner. The plaintiff's opinion testimony falls well short of the long-standing, minimum required by *Kilpatrick*. The moving defendant is entitled to judgment in its favor as a matter of law on the issue of whether the defendant proximately caused an injury which would not otherwise have occurred.[24]

## TISSUE PLASMINOGEN ACTIVATOR ALONE WOULD HAVE DONE NOTHING

Remarkably unaware of Mr. Ruffino's critically important Magnetic Resonance Angiogram on December 23, 2015, emergency department physician Troy Pope, M.D., and internist Alfred Callahan, M.D. together, nearly identically, criticize Clark Archer, M.D. for failing to "initiate the administration of tPA *and* arrange for transfer to a comprehensive stroke center for additional treatment, which likely would have included an endovascular thrombectomy." This criticism is the affirmative concession that the presence, or absence, of tPA alone did not proximately cause an outcome which would not otherwise have occurred.[25] Fed. R. Civ. P. 56(g) encourages the Court to identify material facts not genuinely in dispute, and treat the fact as established in this case.

At a minimum, due to Plaintiffs' opinion witnesses' concession that a thrombectomy would have been necessary *in conjunction* with tPA, the Court should expressly find that tPA alone would not have changed the outcome in this case.

## CONCLUSION

In conclusion, StoneCrest's Motion for Summary Judgment should be granted because Plaintiffs fail to create a genuine issue of material fact on causation.

---

[23] Affidavit of Dr. Pope, Doc. 46-1, at ¶¶15-17, 19. Affidavit of Dr. Callahan, Doc. 46-2, at ¶¶12-14, 16.
[24] Tenn. Code Ann. §29-26-115(a)(3).
[25] *Id.*

5

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

**/s/ C.J. Gideon, Jr.**
**C.J. Gideon, Jr., # 6034**
**J. Blake Carter, # 30098**
315 Deaderick Street, Suite 1100
Nashville, TN  37238
(615) 254-0400
cj@gideoncooper.com
blake@gideoncooper.com

*Counsel for HCA Health Services of Tennessee, Inc. d/b/a StoneCrest Medical Center*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished, by electronic means via the Court's electronic filing system, this 3rd day of January 2018 to the following:

| | |
|---|---|
| Brian Cummings<br>Brian Manookian<br>Cummings Manookian, PLC<br>45 Music Square West<br>Nashville, TN  37203<br><br>Mark Hammervold<br>Hammervold, PLC<br>315 Deaderick Street, Suite 1550<br>Nashville, TN  37238<br><br>*Counsel for Plaintiff* | James E. Looper<br>Bryant Witt<br>Nate Gorman<br>Hall Booth Smith, P.C.<br>Fifth Third Center<br>424 Church Street, Suite 2950<br>Nashville, TN  37219<br><br>*Counsel for Clark Archer, M.D.* |

**/s/ C.J. Gideon, Jr.**