IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN RUFFINO and MARTHA RUFFINO, Husband and Wife,<br><br>    Plaintiffs,<br><br>v.<br><br>Dr. CLARK ARCHER and HCA HEALTH SERVICES OF TENNESSEE, INC. d/b/a STONECREST MEDICAL CENTER<br><br>    Defendants. | CASE No. 3:17-cv-00725<br>Judge William L. Campbell, Jr.<br>Magistrate Judge Chip Frensley<br><br>JURY DEMAND |

___

**DEFENDANT DR. CLARK ARCHER'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**
___

COMES NOW Defendant **DR. CLARK ARCHER** ("Dr. Archer"), by and through counsel, files this Memorandum in Support of the Motion to Dismiss Plaintiffs' Amended Complaint asserting that Plaintiffs' failure to attach a certificate of good faith to their Amended Complaint requires the Court dismiss Plaintiffs' Amended Complaint with prejudice for failure to state a claim upon which relief may be granted.

### I. STATEMENT OF THE CASE

Plaintiffs filed their original complaint on April 20, 2017 ("Original Complaint"). (Doc. 1). Attached to the Original Complaint as Exhibit 2 was a Certificate of Good Faith signed by Plaintiffs' counsel. (Doc. 1, Exh. 2). This exhibit certified that Plaintiffs' counsel had consulted with one (1) or more experts who provided a signed written statement confirming that, upon information and belief, the expert was competent under Tenn. Code Ann. § 29-26-115 to express an opinion in the lawsuit, and that based on the medical records for the Plaintiff, there was a

good faith basis to maintain the action consistent with the requirements of Tenn. Code Ann. § 29-26-115. (Doc. 1, Exh. 2). In the Original Complaint, in addition to the pled facts, Plaintiffs assert the following theories of liability against Dr. Archer:

> 95. Dr. Archer owed Mr. Ruffino a duty to provide appropriate care and treatment, including during the time in question.
> 96. The ways in which Dr. Archer failed to comply with the applicable standard of recognized acceptable professional practice ("standard of care") include, but are not limited to:
>     a. Not providing proper care and treatment to Mr. Ruffino during his February 17, 2016 ER presentation;
>     b. Not timely ordering a neurology consult for Mr. Ruffino during his February 17, 2016 ER presentation;
>     c. Not timely ordering an MRI of the brain for Mr. Ruffino during his February 17, 2016 ER presentation;
>     d. Not timely ordering a CTA for Mr. Ruffino during his February 17, 2016 ER presentation;
>     e. Not timely ordering the administration of tPA for Mr. Ruffino for his thrombotic stroke on February 17, 2016;
>     f. Not timely arranging for a thrombectomy to be performed on Mr. Ruffino for his thrombotic stroke on February 17, 2016;
>     g. Not following StoneCrest's written policies and procedures that existed on February 17, 2016 as applied to the workup, diagnosis, and treatment of ER patients with a suspected stroke;
>     h. Not timely diagnosing Mr. Ruffino with a thrombotic stroke on February 17, 2016; and,
>     i. Not timely arranging for treatment for Mr. Ruffino's thrombotic stroke on February 17, 2016.

(Doc. 1, ¶¶ 95-96). A motion to dismiss for failure to state a claim premised upon deficiencies associated with mailing the notice of intent letters was filed on Dr. Archer's behalf, to which Plaintiffs responded, and additional related motions were filed. (*see* Docs. 9, 12, 17, 19, 21). Dr. Archer hereby adopts and incorporates the arguments and authorities set out in support of its Motion to Dismiss the original Complaint.

On January 3, 2018, after the close of written discovery, completion of fact witness depositions, and while a motion for summary judgment was pending, Plaintiffs filed their Motion

for Leave to File an Amended Complaint. (*See* Docs. 37, 38, 50). The Court granted the Plaintiffs' Motion to File an Amended Complaint on March 2, 2018. (Doc. 60). As a result, Plaintiffs' Amended Complaint was filed. (Doc. 61).

In addition to alleging a completely new set of facts,[1] Plaintiffs' Amended Complaint alleges the following claims of liability against Dr. Archer:

> 60. The ways in which Dr. Archer failed to comply with the applicable standard of recognized acceptable professional practice ("standard of care") include, but are not limited to:
>    a. Not providing proper care and treatment to Mr. Ruffino during his February 17, 2016 ER presentation;
>    b. Not timely ordering the administration of tPA for Mr. Ruffino for his thrombotic stroke on February 17, 2016;
>    c. Not timely arranging for a transfer to a comprehensive stroke center, including so that a endovascular thrombectomy could be performed on Mr. Ruffino for his thrombotic stroke on February 17, 2016;
>    d. Failing to communicate significant information about the presentation and progression of Mr. Ruffino's neurological condition to the consulting neurologist, Dr. Chitturi.
>    e. Not following StoneCrest's written policies and procedures that existed on February 17, 2016 as applied to the workup, diagnosis, and treatment of ER patients with a suspected stroke;
>    f. Not timely diagnosing Mr. Ruffino with a thrombotic stroke on February 17, 2016; and,
>    g. Not timely arranging for treatment for Mr. Ruffino's thrombotic stroke on February 17, 2016.
> 61. When Dr. Archer identified Mr. Ruffino's new neurological deficits at or soon after 1220, and knew by 1300 that these neurological deficits were not present from 1000-1200 and the patient was last seen neurologically normal as recently as 1200, it was within the window of time at 1220-1300 for treatment for the stroke including IV tPA and endovascular thrombectomy to have likely provided Mr. Ruffino with a better outcome than he received without that treatment being provided.
> 62. Such treatment would have improved the blood flow through the vessel that was experiencing a decreased amount of blood flow and thus causing the stroke. The treatment that could have been provided by Dr. Archer and/or under his direction and/or

---

[1] *See* Doc. 61, ¶¶ 18 – 56.

> management was to administer IV tPA and to arrange for transfer to a comprehensive stroke center.
>
> 63. Had Dr. Archer initiated administration of IV tPA and arranged for transfer to a comprehensive stroke center for appropriate treatment, including endovascular thrombectomy, within at least 6-8 hours of Dr. Archer first seeing the patient at approximately 1220, Mr. Ruffino would have had a better outcome from his stroke. That improved blood flow via such treatment being provided within 6-8 hours of 1200 would have limited or prevented the permanent brain injury that occurred as a result of the lack of such treatment causing that decreased blood flow through that vessel of the brain – thus providing a better outcome for the patient.
>
> 64. In addition, even if there were new stroke symptoms present at approximately 0800-0830 on February 17, 2016 that anyone thought were persistent and continuous through when Dr. Archer first saw the patient and recognized neurological deficits by 1220-1300, it was still within 6-8 hours of 0800-0830 for proper treatment to have likely provided a better outcome for this stroke patient.

(Doc. 61, ¶¶ 60-64). The first time claims numbered 60 (b) – (d) and 61 – 64 appeared are in the Amended Complaint. Further, at paragraph 78 of the Amended Complaint, Plaintiffs state that they did not and are not required to file a certificate of good faith with their Amended Complaint. *Id.* at ¶ 78.

## II. ARGUMENT AND AUTHORITY:

### A. Standard for granting a Rule 12(b)(6) Motion to Dismiss and applicability of Tennessee substantive law regarding health care liability actions:

Following *Twombly*[2] and *Iqbal*,[3] the requirement of Rule 8(a)(2) of Federal Rules of Civil Procedure that the complaint contain a short and plain statement that the pleader is entitled to relief now imposes legal and factual demands on the drafters of the complaints filed in the federal court system. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). Now, "to survive a motion to dismiss, the plaintiff must allege facts that, if

---

[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).
[3] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

accepted as true, are sufficient to raise a right to relief above the speculative level, and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citations and internal quotations omitted). Even though courts are to "accept all well-pleaded factual allegations in the complaint as true," courts do not "accept as true a legal conclusion couched as a factual allegation." *Hensley Mfg.*, 579 F.3d at 609 (citations omitted).

Further, when exercising jurisdiction pursuant to diversity, a federal court must apply the substantive law, including choice of law rules, of the state in which it sits. *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 501 (6th Cir. 2003) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)); *see also Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 692 (6th Cir. 2013). Regarding torts, "Tennessee follows the most significant relationship rule, which provides that the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." *Miller v. Uchendu*, No. 2:13-CV-02149-JPM, 2013 WL 4097340, at *2 (W.D. Tenn. Aug. 13, 2013) (citations omitted) (internal quotation marks omitted); *see also Menuskin v. Williams*, 145 F.3d 755, 761 (6th Cir. 1998) (applying Tennessee law to transactions wholly connected with Tennessee).

In the present case, because the Court is exercising jurisdiction pursuant to diversity, the alleged injuries took place in Tennessee, and no other state has a more significant relationship to the litigation, Tennessee law supplies the substantive law in the present case. Accordingly, the THCLA will apply to the present lawsuit filed by the Plaintiffs. *See Miller*, 2013 WL 4097340, at *2 (applying the THCLA to the claims before the court). Even though Plaintiffs' Amended Complaint contains an averment that Plaintiffs are not required by Tennessee law to file a certificate of good faith with their Amended Complaint, this is a legal conclusion couched as a factual allegation, which the Court is not required to accept as true. *Hensley Mfg.*, 579 F.3d at

5

609. For the reasons contained herein, Tennessee law does require a certificate of good faith to be filed with each complaint. Absent filing this certificate of good faith, dismissal with prejudice is appropriate. *See* Tenn. Code Ann. § 29-26-122. Therefore, Plaintiffs' Amended Complaint is not plausible on its face, it does not state a claim upon which relief can be granted, and the claims must be dismissed with prejudice.

> **B.    Plaintiffs' non-compliance with the certificate of good faith requirement of Tennessee Health Care Liability Act ("THCLA"), codified at Tenn. Code. Ann. § 29-26-122, requires the Court dismiss the Plaintiffs' Amended Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.**
>
>> **1.    Tenn. Code Ann. § 29-26-122 does not distinguish between a complaint and an amended complaint.**

Absent the "common knowledge exception,"[4] the THCLA mandates that plaintiffs file a certificate of good faith to certify that they consulted with at least one (1) expert who "provided a signed written statement" that: (1) he or she is competent pursuant to Tenn. Code Ann. § 29-26-115[5] to offer an expert opinion, (2) has reviewed the medical records at issue,[6] and (3) believes there is a "good faith basis to maintain the action consistent" with the elements that the plaintiff has the burden to prove. Tenn. Code Ann. § 29-26-122. Further, as to filing of the certificate of good faith and consequences for not filing, in relevant parts, the THCLA states:

---

[4] The "common knowledge exception" is an exception to the requirement of expert proof to establish a claim of negligence against a health care provider. *See Osunde v. Delta Med. Ctr.*, 505 S.W.3d 875, 886 (Tenn. Ct. App. 2016). In other words, "expert testimony is not required where the act of alleged wrongful conduct lies within the common knowledge of a layperson." *Id.* This exception is not implicated in the present case, wherein the allegations concern whether or not it was medically indicated to administer a potentially deadly drug to one of the Plaintiffs. *See* Tenn. Code Ann. § 29-26-101 (defining "health care liability actions" as "any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based.").

[5] This statute outlines the expert qualifications and burden of proof for a Tennessee health care liability action. The expert must be capable of establishing all three (3) elements the plaintiff has the burden of providing.

[6] In very limited circumstances, when a defendant does not timely release the medical records this requirement may be excused by a court. *See* Tenn. Code Ann. § 29-26-122(a)(2)(B). This is not implicated in the present case, nor does the certificate of good faith filed with the original complaint indicate that this exception is applicable.

> [T]he plaintiff or plaintiff's counsel **shall file a certificate of good faith with the complaint**. If the certificate is not filed with the complaint, the complaint **shall be dismissed**, as provided in subsection (c), absent a showing that the failure was due to the failure of the provider to timely provide copies of the claimant's records requested as provided in § 29-26-121 or demonstrated extraordinary cause.
>
> * * *
>
> (c) The failure of a plaintiff to file a certificate of good faith in compliance with this section **shall, upon motion, make the action subject to dismissal with prejudice**.

Tenn. Code Ann. § 29-26-122 **(emphasis** added).

The Tennessee Supreme Court held that compliance with the certificate of good faith requirement is mandatory and strict compliance is required. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 309-10 (Tenn. 2012); *see also Sirbaugh v. Vanderbilt Univ.*, 469 S.W.3d 46, 51 (Tenn. Ct. App. 2014) ("Our Supreme Court in *Myers* has opined that the filing of a certificate of good faith with a complaint is mandatory, and strict compliance is required."). In reaching this holding, the court construed the legislative intent behind the use of the word "shall" and noted that rules of statutory interpretation[7] presume that the "legislature intended that each word be given full effect." *Myers*, 382 S.W.3d at 308 (citations omitted). To give full weight to this presumption, the inverse must be true as well – the legislature's choice not to include a word must also be given full effect. Particularly, as is the case here, the absence of a modifier to the word "complaint" must be given full effect as it indicates that the legislature did not intend to distinguish between complaints. Absent any modifiers, the statutory requirement that a

---

[7] Additional rules of statutory interpretation turn on whether or not the statutory language is ambiguous or not. When the language is unambiguous, a court reads the language pursuant to its "plain meaning and ordinary usage." *Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 553 (Tenn. 2013). Whereas, ambiguous language permits the court to "consider the overall statutory scheme, the legislative history, and other sources." *Id.*

certificate of good faith be filed with the complaint encompasses all complaints, including amended complaints.

### 2. Amended complaints that change the claims of liability or that allege new or facts requires a new certificate of good faith.

Further, no statutory interpretation is required because Tennessee courts have already recognized that an amended complaint requires a new certificate of good faith. *See Sirbaugh*, 469 S.W.3d at 52; *Groves v. Colburn*, No. M2012-01834-COA-R3CV, 2013 WL 3964758, at *4 (Tenn. Ct. App. July 30, 2013).[8] More specifically, as is the situation in the present case, when "the allegations changed to claim . . . liability based on different facts, a new certificate based upon the expert's review of newly alleged facts was necessary." *Sirbaugh*, 469 S.W.3d at 53 (quoting *Groves*, 2013 WL 3964758, at *4); *see also Ramirez v. Roberts*, No. 15C336 (Tenn. Cir. Ct. Hamilton County) (trial court order barring new claims of liability in an amended complaint when not accompanied by a new certificate of good faith).[9] Although the *Sirbaugh* and *Groves* cases involved a plaintiff filing an amended complaint to add a new defendant, the courts' language regarding alleging new facts or changing the claims of liability is directly applicable to the instant case. Likewise, in *Ramirez v. Roberts*, the court held the *Groves* and *Sirbaugh* cases require a certificate of good faith when an amended complaint alleges new facts and a new cause of action.[10] Taken together, the three (3) cases establish that a new certificate of good faith is required when either new claims of liability are alleged or new facts are alleged.

---

[8] A copy of these cases are attached hereto as **Collective Exhibit 1.**
[9] A copy is attached hereto as **Exhibit 2**.
[10] Exh. 2, ¶ 5.

8
Case 3:17-cv-00725   Document 67   Filed 04/23/18   Page 8 of 14 PageID #: 798

### i. The new factual allegations in the Plaintiffs' Amended Complaint requires a new certificate of good faith to be filed contemporaneously.

The essence of the certificate of good faith is to provide assurances that there is a good faith basis for filing the complaint. *Myers*, 382 S.W.3d at 309. When the alleged facts change, the foundation for the expert's opinion is gone. As a result, the certificate of good faith filed with the original complaint no longer has any support, and a new certificate of good faith is required.

Here, Plaintiffs have completely pled a different set of facts[11] that are not supported by a certificate of good faith. For example, the Original Complaint indicates that when Mr. Ruffino presented to the Emergency Room at Stonecrest medical center, he was suffering from (1) weakness, including to his face, (2) slurred speech, and (3) dizziness. (Doc. 1, ¶ 19). Each of these conditions was alleged to be a neurological deficiency. (Doc. 1, ¶¶ 20-23). Mr. Ruffino allegedly continued to complain of dizziness throughout his presentation to the ER of Stonecrest, and he demonstrated abnormal speech during the presentation. (Doc. 1, ¶¶ 25 – 28). By 1015 on the morning of presentation, "Mr. Ruffino suffered dizziness for more than 90 minutes." (*Id.* at ¶ 36). In contrast, in the Amended Complaint, Plaintiffs now allege that Mr. Ruffino was neurologically normal from 0949 – 1200. (Doc. 61, ¶ 19). Likewise, the Amended Complaint contains allegations that neurological checks were performed at 1000, 1015, 1030, 1045, 1110, and 1200, and Mr. Ruffino was neurologically normal. (Doc. 61, ¶ 22). As these brief examples demonstrate, the facts alleged in the Amended Complaint are completely different from the Original Complaint. As Plaintiffs alleged new facts in their Amended Complaint, a new certificate of good faith was required to certify that an expert believed there was a good faith basis to bring claims based on these facts.

---

[11] *Compare* Doc. 1, ¶¶ 19 – 92, *with* Doc. 61, ¶¶ 18 – 56.

### ii. The new claims of liability in the Plaintiffs Amended Complaint requires a new certificate of good faith.

Likewise, Plaintiffs have alleged new claims of liability.[12] The Amended Complaint, for the first time, now alleges the following new claims of liability:

> 60. The ways in which Dr. Archer failed to comply with the applicable standard of recognized acceptable professional practice ("standard of care") include, but are not limited to:
> \* \* \*
> b. Not timely ordering the administration of tPA for Mr. Ruffino for his thrombotic stroke on February 17, 2016;
> c. Not timely arranging for a transfer to a comprehensive stroke center, including so that a endovascular thrombectomy could be performed on Mr. Ruffino for his thrombotic stroke on February 17, 2016;
> d. Failing to communicate significant information about the presentation and progression of Mr. Ruffino's neurological condition to the consulting neurologist, Dr. Chitturi.
> \* \* \*
> 61. When Dr. Archer identified Mr. Ruffino's new neurological deficits at or soon after 1220, and knew by 1300 that these neurological deficits were not present from 1000-1200 and the patient was last seen neurologically normal as recently as 1200, it was within the window of time at 1220-1300 for treatment for the stroke including IV tPA and endovascular thrombectomy to have likely provided Mr. Ruffino with a better outcome than he received without that treatment being provided.
> 62. Such treatment would have improved the blood flow through the vessel that was experiencing a decreased amount of blood flow and thus causing the stroke. The treatment that could have been provided by Dr. Archer and/or under his direction and/or management was to administer IV tPA and to arrange for transfer to a comprehensive stroke center.
> 63. Had Dr. Archer initiated administration of IV tPA and arranged for transfer to a comprehensive stroke center for appropriate treatment, including endovascular thrombectomy, within at least 6-8 hours of Dr. Archer first seeing the patient at approximately 1220, Mr. Ruffino would have had a better outcome from his stroke. That improved blood flow via such treatment being provided within 6-8 hours of 1200 would have limited or prevented the permanent brain injury that occurred as a result of the lack of such treatment causing that decreased blood flow through that

---

[12] *Compare* Doc. 61, ¶¶ 60 – 64, *with* Doc. 1, ¶¶ 95 – 96. The Amended Complaint adds additional causes of liability against Dr. Archer.

> vessel of the brain – thus providing a better outcome for the patient.
> 64. In addition, even if there were new stroke symptoms present at approximately 0800-0830 on February 17, 2016 that anyone thought were persistent and continuous through when Dr. Archer first saw the patient and recognized neurological deficits by 1220-1300, it was still within 6-8 hours of 0800-0830 for proper treatment to have likely provided a better outcome for this stroke patient.[13]

The above noted allegations are completely new claims of liability asserted against Dr. Archer that are asserted for the first time in Plaintiffs' Amended Complaint. These new claims of liability concern the care and treatment rendered to Mr. Ruffino, and as such, they require a new certificate of good faith. Yet, there is no certificate of good faith to support bringing these new claims. Therefore, Plaintiffs' Amended Complaint should be dismissed with prejudice.

### 3. The procedural effect of an amended complaint is analogous to a re-filed complaint such that they require a certificate of good faith.

Additionally, requiring a certificate of good faith be filed contemporaneously with an amended complaint that alleges new claims of liability or newly alleged facts is consistent with the holding in *Myers* given the procedurally similar effects of an amended complaint and a complaint that is re-filed after voluntary non-suiting the case. An amended complaint generally supersedes the original pleading such that the original complaint no longer has any legal effect. *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 617 (6th Cir. 2014) (citing Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2010); *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 131 (6th Cir. 2014) (citing 61B Am. Jur. 2d Pleading § 789 ("An amended pleading that is complete in itself and does not refer to or adopt a former pleading as a part of it supersedes or supplants the former pleading.")); *see also Stephens v. Home Depot U.S.A., Inc.*, 529 S.W.3d 63, 70 n.4 (Tenn. Ct. App. 2016), *appeal denied* (Apr. 13, 2017)

---

[13] Doc. 61, ¶¶ 62 – 64.

(clarifying that under the Tennessee Rules of Civil Procedure, an amended complaint is one that is complete in itself without adoption or reference to the original complaint and that it supersedes the original complaint, whereas an amendment to a complaint only modifies the existing original complaint such that the original complaint still remains in effect).[14]  Similarly, when a party files a voluntary non-suit, then re-files the case, the original lawsuit has no legal effect.  This is demonstrated in *Myers*, wherein the Tennessee Supreme Court held:

> [A]fter [plaintiff's] original action terminated, **he could not rely on statements made by experts relative to that action as a substitute for a certificate of good faith filed with his new action** because the statute provides that "[i]f the certificate is not filed with the complaint, the complaint shall be dismissed." Tenn.Code Ann. § 29–26–122(a). The statements upon which [plaintiff] seeks to rely were not filed with his new complaint.

*Myers*, 382 S.W.3d at 310.  Because the original complaint no longer has any legal effect after the subsequent complaint is filed, the subsequent complaint – regardless of whether it is an amended complaint or complaint filed after a voluntary nonsuit – must have a certificate of good faith to support the claims and or facts contained within it.  Otherwise, a plaintiff has not certified that an expert believes there is a good faith basis for the claims pled upon the facts alleged in the subsequent complaint.  Absent the filing of the certificate of good faith, a plaintiff's complaint is to be dismissed with prejudice unless plaintiff can demonstrate that an exception[15] applies.  Tenn. Code Ann. § 29-26-122.

---

[14] *See* ¶ 78 of the Amended Complaint ("no additional certificate is required for an amended complaint . . . [that] does not add new Defendants").  This language demonstrates the amended complaint is complete and does not incorporated by reference or adopt the prior certificate of good faith.  As a result, Rule 10(c) of Federal Rules of Civil Procedure does not operate to incorporate the original certificate of good faith.

[15] Plaintiffs already have the medical records so they cannot rely on the exception related to issues obtaining the medical records. *See* TENN. CODE ANN. § 29-26-122(a); *see also* Doc. 1, Exh. 2 (certifying a good faith basis after a review of the medial records). Further, the choice not to comply with the filing of the certificate of good faith requirement cannot be "extraordinary cause." *See* TENN. CODE ANN. § 29-26-122(a).

Here, given the procedurally similar effects of Plaintiffs' Amended Complaint to a re-filed complaint (*i.e.*, the legal nullity of a preceding complaint), Plaintiffs were required to file a new certificate of good faith, which they failed to do. No exception applies. Therefore, Plaintiffs' Amended Complaint is to be dismissed with prejudice.

### III. CONCLUSION

In conclusion, Tenn. Code Ann. § 29-26-122 requires strict compliance and does not distinguish between amended and original complaints. Tennessee courts have held that an amended complaint is subject to the certificate of good faith requirement and dismissed a plaintiff's claims when no certificate of good faith was attached at the time of filing. For these and the foregoing reasons, dismissal of the Plaintiffs' Amended Complaint with prejudice is appropriate.

Respectfully submitted on this 23rd day of April 2018.

        HALL BOOTH SMITH, P.C.

By: /S/ Bryant Witt
   James E. Looper, Jr. BPR #025200
   Bryant C. Witt BPR #018295
   Fifth Third Center
   424 Church St., Ste. 2950
   Nashville, TN 37219
   (615) 313-9911
   *Attorneys for Defendant Dr. Clark Archer*

## CERTIFICATE OF SERVICE

I hereby certify that: I have this 23rd day of April 2018, served all parties in this matter with the foregoing **DEFENDANT DR. CLARK ARCHER'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT by CM/ECF**, to counsel of record as follows:

Brian Manookian, Esq.
Brian Cummings, Esq.
Afsoon Hagh, Esq.
CUMMINGS MANOOKIAN PLC
45 Music Square West Nashville, TN 37203
bcummings@cummingsmankoonian.com
bmanookian@cummingsmankoonian.com
afsoon@cummingsmanookian.com

Mark Hammervold, Esq.
Hammervold, PLC
315 Deaderick Street, Suite 1550
Nashville, TN 37238
**Counsel for Plaintiffs, JOHN RUFFINO and MARTHA RUFFINO, Husband and Wife**

C. J. Gideon, Jr., Esq
J. Blake Carter, Esq.
GIDEON COOPER & ESSARY
315 Deaderick Street, Suite 1100
Nashville, TN 37238
E-mail: cj@gideoncooper.com
E-mail: blake@gideoncooper.com
**Counsel for HCA Health Services of Tennessee, Inc. d/b/a StoneCrest Medical Center**

                        HALL BOOTH SMITH

By:   */S/ Bryant Witt*