UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN RUFFINO and MARTHA RUFFINO, Husband and Wife, ) | ) |
| Plaintiffs, ) | ) |
| v. ) | ) Civil Action No.: 3:17-cv-00725 |
| DR. CLARK ARCHER and HCA HEALTH SERVICES OF TENNESSEE, INC. d/b/a STONECREST MEDICAL CENTER, ) | ) Jury Demand ) Judge Campbell ) Magistrate Judge Newbern |
| Defendants. ) | ) |

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF HCA HEALTH SERVICES OF TENNESSEE, INC. d/b/a STONECREST MEDICAL CENTER'S MOTION FOR SUMMARY JUDGMENT

HCA Health Services of Tennessee, Inc. d/b/a StoneCrest Medical Center ("StoneCrest") submits this Supplemental Memorandum in support of its Motion for Summary Judgment.[1]

### Procedural History

HCA Health Services of Tennessee, Inc. d/b/a StoneCrest Medical Center (StoneCrest) submitted its Motion for Summary Judgment on November 30, 2017,[2] supported by the affidavit of Jodi Dodds, M.D., a vascular neurologist and the Medical Director of the Duke Regional Hospital Stroke Center,[3] and the affidavit of Adrian Jarquin-Valdivia, M.D.,[4] the neurologist and neuro-critical care specialist who managed much of Mr. Ruffino's care at Centennial Medical Center from February 17 - 26, 2016.

---

[1] Doc. No. 38.
[2] *Id.*
[3] Doc. No. 41-2, ¶¶3-6.
[4] Doc. No. 41-1.

1

StoneCrest complied with accepted standards of professional practice in the emergency room care of Mr. Ruffino on February 17, 2016.[5]

Magnetic resonance imaging studies of Mr. Ruffino's brain on December 23, 2015, nearly two (2) months before his presentation at StoneCrest, demonstrated a completely closed, or 99% occluded, M1 branch of Mr. Ruffino's middle cerebral artery.[6]

The CT-angiogram obtained at StoneCrest Medical Center on February 17, 2016 confirmed occlusion in the same M1 branch of Mr. Ruffino's middle cerebral artery.[7]

Thrombolysis, utilizing intravenous tPA, was not indicated, and would not have prevented an outcome which would not otherwise have occurred, to a reasonable degree of medical certainty.[8] In fact, the peer reviewed literature demonstrates that 84.5% of patients with an *acute*, as opposed to chronic, occlusion in the M1 branch of the MCA had a poor outcome despite timely administration of intravenous tPA.[9]

Endovascular intervention was not an appropriate option. An embolectomy is not indicated to excavate a long-standing, fixed lesion.[10]

The Plaintiffs' Response to the Motion for Summary Judgment was required by December 28, 2017.[11] On December 28, 2017, Plaintiffs submitted the affidavits of

---

[5] Affidavit of Dr. Valdivia, Doc No. 41-1, ¶9, at p. 3; Affidavit of Dr. Dodds, Doc. No. 41-2, ¶20, at p. 4; Affidavit of Suresh Chitturi, M.D., ¶11 at p. 3-4 (filed with Supplemental Notice of Filing).
[6] Affidavit of Dr. Dodds, Doc. No. 41-2, ¶11, at p. 3.
[7] Affidavit of Dr. Valdivia, Doc. No. 41-1, ¶9, at p. 2.
[8] Affidavit of Dr. Valdivia, Doc. No. 41-1, ¶10, at p. 3; Affidavit of Dr. Dodds, Doc. 41-2, ¶16, at p. 4.
[9] Affidavit of Dr. Valdivia, Doc. No. 41-1, ¶10, citing Table 4 from *Site of Arterial Occlusion Identified by Transcranial Doppler Predicts the Response to IV Thrombolysis for Stroke*, **STROKE**, 2007; 38: 948-954.
[10] Affidavit of Dr. Dodds, Doc. No. 41-2, ¶16, at p. 4.
[11] Doc. No. 43.

Alfred Callahan, M.D.[12] and Troy Pope, M.D.[13] as the substantive response to the pending Motion for Summary Judgment.[14]

By Order entered April 9, 2018, this Court granted the Plaintiffs' Motion for Leave to file an Amended Complaint,[15] and allowed StoneCrest to supplement its pending Motion for Summary Judgment.[16]

The depositions of Alfred Callahan, M.D. and Troy Pope, M.D. were taken on April 18, 2018 and April 23, 2018, respectively.[17]

The testimony of Drs. Callahan and Pope demonstrates the absence of a genuine dispute on the indispensable issue of causation. Dr. Pope also confirmed he has no opinions that StoneCrest or its employees deviated from the standard of care.

The Court should enter summary judgment in favor of HCA Health Services of Tennessee, Inc. d/b/a StoneCrest Medical Center.

## Standards of Law

In this diversity action, Plaintiffs must prove the acceptable standard of professional practice applicable to each Defendant, and a departure from accepted standards of care which proximately caused an injury which would not otherwise have occurred.[18]

---

[12] Doc. No. 46-2.
[13] Doc. No. 46-1.
[14] Also note StoneCrest's recently-filed Motion to Strike these affidavits.
[15] Filed on April 9, 2018 (Doc. No. 61).
[16] Doc No. 60.
[17] Depositions of Dr. Callahan and Dr. Pope filed with Supplemental Notice of Filing.
[18] Tenn. Code Ann. 29-26-115(a); *Miller v. Uchendu*, No. 2:13-CV-02149-JPM, 2013 WL 4097340, at *2 (W.D. Tenn. Aug. 13, 2013)(attached as collective Exhibit A).

## There is No Admissible Causation Evidence

Proof of potential improvement, a chance at a better outcome, is inadequate under Tennessee law:

> "Recovery is disallowed unless it can be shown that the plaintiff would not have suffered the physical harm but for the defendant's negligence; *i.e.*, that it is more probable than not that but for the negligence of the defendant, the plaintiff would have recovered, or survived."[19]

A plaintiff in Tennessee may not recover for loss of a better chance of recovery, or an impaired opportunity for a more favorable result.[20] Proof of causation in Tennessee requires a demonstration that an alleged treatment or intervention was required by the standard of care, *and* that intervention would have more probably than not – i.e. more than 50% - led to survival or recovery.[21]

The Plaintiffs cannot prove causation, an indispensable element of their case.

Troy Pope, M.D. withdrew any and all opinions on causation during his April 23, 2018 deposition.[22] This testimony renders his causation opinions in his affidavit obsolete.[23]

Alfred Callahan, M.D.[24] agreed with StoneCrest. Use of intravenous tPA *never rises* to the more probable than not standard. Experience, and the literature,[25] establish

---

[19] *Kilpatrick v. Bryant*, 868 S.W.2d 594, 601 (Tenn. 1993).
[20] *Kilpatrick*, *supra*, at 603.
[21] *Kilpatrick, supra* at 602.
[22] Deposition of Troy Pope, M.D., 96:21-97:7 (filed with Supplemental Notice of Filing).
[23] *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006)("A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction."); *Starr v. Hill*, No. 10-2070V, 2012 WL 12868268, at *3 (W.D. Tenn. Feb. 6, 2012)("Moreover, if there were inconsistent statements in Dr. Sheehan's deposition testimony and his affidavit testimony, proper application of the cancellation rule would require that the testimony in both documents be excluded not just the affidavit as Starr requests. 'Tennessee follows the rule that contradictory statements by the same witness regarding a single fact cancel each other out ... and are 'no evidence' of the fact sought to be proved.'")(attached as collective Exhibit A).
[24] Dr. Callahan offered no opinion on standards of care applicable to any of the providers. Deposition of Alfred Callahan, M.D. 49:17-50:2 (filed with Supplemental Notice of Filing).
[25] Deposition of Alfred Callahan, M.D., 43:7-20.

that tPA produces benefit for, at best, 30% of the patients who receive the drug.[26] The reality is that twelve (12) patients must be treated with tPA, in order for one to benefit.[27]

The joint American Heart Association/American Stroke Association Guidelines, in effect at the time of Mr. Ruffino's presentation to StoneCrest Medical Center, required the presence of a 6, or greater, on the National Institutes of Health Stroke Scale [NIHSS] before endovascular embolectomy would be considered.[28] Mr. Ruffino never had a NIHSS of 6 or greater during his admission at StoneCrest.[29]

### Dr. Pope Has No Criticisms of Care Provided by StoneCrest

Putting aside the absence of any dispute on causation, Plaintiffs must also provide admissible opinion testimony that StoneCrest departed from accepted standards of care to prevail on the claims of direct liability alleged against StoneCrest.[30]

As a reminder, Dr. Callahan has no opinion on standards of care applicable to any provider, meaning Dr. Pope is Plaintiffs' only standard of care opinion witness.[31]

The affidavit of Dr. Pope contains no criticism of StoneCrest for (1) failing to obtain a timely neurology consult,[32] (2) not timely acting leading to the ordering of an [sic] MRI of the brain for Mr. Ruffino,[33] and (3) not timely acting leading to the ordering of a CTA for Mr. Ruffino.[34] These subparts of Plaintiffs' claim must be dismissed.

---

[26] Deposition of Alfred Callahan, M.D., 33:19-34:6; 36:24-37:4; and 43:7-9.
[27] *Id.* at 74:11-15.
[28] Deposition of Alfred Callahan, M.D., 50:10-12; 51:1-53:22.
[29] Affidavit of Suresh Chitturi, M.D., ¶9 at p. 3 (filed with Supplemental Notice of Filing); Deposition of Dr. Pope, 94:4-7.
[30] Tenn. Code Ann. 29-26-115(a).
[31] Deposition of Alfred Callahan, M.D. 49:17-50:2 (filed with Supplemental Notice of Filing).
[32] Amended Complaint, ¶70(c) (Doc. No. 61)
[33] *Id.* at ¶70(d).
[34] *Id.* at ¶70(e).

During his deposition, Dr. Pope confirmed that he has no criticisms of the care provided by the StoneCrest nurses[35] and no criticisms of StoneCrest for failing to have proper policies and procedures in place.[36]

As to the other claims against StoneCrest, Dr. Archer was not an employee of StoneCrest,[37] and the nursing staff could not order tPA or a thrombectomy, make a diagnosis of a thrombotic stroke,[38] or arrange for Mr. Ruffino's transfer.[39] These were all decisions vested exclusively in Mr. Ruffino's physicians, including Dr. Archer.[40]

There is no admissible opinion evidence that StoneCrest departed from accepted standards of care in the care it or its employees provided to Mr. Ruffino. On this independent basis, summary judgment is appropriate as a matter of law for StoneCrest.

## Conclusion

"Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[41] This posture of this case presents "such a situation."

There is no admissible causation evidence establishing that any intervention would have, more likely than not that, prevented or even improved Mr. Ruffino's injuries.

---

[35] Deposition of Troy Pope, M.D., 107:1:-108:11.
[36] Deposition of Troy Pope, M.D., 108:12-15.
[37] Deposition of Dr. Archer, 15:13-16:4.
[38] *See Richberger v. W. Clinic, P.C.*, 152 S.W.3d 505, 511 (Tenn. Ct. App. 2004)(holding generally that nurses are prohibited from making a medical diagnosis pursuant to Tenn. Code Ann. §63–7–103(b)).
[39] *See generally* Tenn. Code Ann. §63-7-103(b)), which prohibits a nurse from making a diagnosis, developing a plan of medical care, or prescribing medications.
[40] *Id.; see also* Tenn. Code Ann. §63-6-204(a)(1).
[41] *In re: Dow Corning Corporation*, 541 BR 643, 653 (E.D. Mich. 2015)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

Likewise, there is no admissible evidence supporting a deviation of the standard of care for any of the claims of direct liability against StoneCrest. Failure to prove either element is fatal to Plaintiffs' claims and entitles StoneCrest to summary judgment.

Because there is no genuine issue of material fact that StoneCrest directly complied with accepted standards of care and did not cause any injury to Plaintiffs that would not otherwise have occurred, StoneCrest respectfully submits it is entitled to summary judgment as a matter of law in this case.

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

By: /s/ C.J. Gideon, Jr.
 C.J. Gideon, Jr. #006034
 J. Blake Carter, # 030098
 Lee T. Nutini, #034374
315 Deaderick Street, Suite 1100
Nashville, TN 37238
(615) 254-0400

*Counsel for HCA Health Services of Tennessee, Inc. d/b/a TriStar Stonecrest Medical Center*

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing has been furnished, by electronic means via the Court's electronic filing system, this 27th day of April, 2018, to the following:

Brian Cummings
Brian Manookian
Afsoon Hagh
Cummings Manookian, PLC
45 Music Square West
Nashville, TN 37203

Mark Hammervold
Hammervold, PLC
315 Deaderick Street, Suite 1550
Nashville, TN 37238

*Counsel for Plaintiff*

James E. Looper
Bryant Witt
Nate Gorman
Hall Booth Smith, P.C.
Fifth Third Center
424 Church Street, Suite 2950
Nashville, TN 37219

*Counsel for Clark Archer, M.D.*

                          **/s/ C.J. Gideon, Jr.**