UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN RUFFINO and MARTHA RUFFINO, Husband and Wife, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action No.: 3:17-cv-00725 ) |
| DR. CLARK ARCHER and HCA HEALTH SERVICES OF TENNESSEE, INC. d/b/a STONECREST MEDICAL CENTER, | ) Jury Demand ) Judge Crenshaw ) Magistrate Judge Newbern ) |
| Defendants. | ) |

## AFFIDAVIT OF SURESH CHITTURI, M.D.

STATE OF TENNESSEE )
)
COUNTY OF RUTHERFORD )

1. I am over 21 years of age and competent in all respects to make this Affidavit. My testimony is based on my education, training, and experience as a neurologist practicing in Smyrna, Tennessee; my own observations and evaluations as Mr. Ruffino's treating physician; and my review of Mr. Ruffino's medical records at StoneCrest Medical Center.

2. After obtaining my medical degree, I completed a neurology residency at Wayne State University in Detroit, Michigan from 2005 to 2008. I then completed a clinical neurophysiology fellowship at the same facility in 2009.

3. I have been board-certified in neurology since 2008 and clinical neurophysiology since 2011. My CV is attached to this affidavit as Exhibit A.

4. I practice at Middle Tennessee Neurology in Smyrna. In February 2016, I provided on-call coverage, when consulted, to patients in the StoneCrest emergency room.

5. I was Mr. Ruffino's treating neurologist at StoneCrest Medical Center on February 17, 2016.

6. On February 17, 2016, Dr. Clark Archer, Mr. Ruffino's treating physician in the emergency department at StoneCrest, consulted me to evaluate Mr. Ruffino. I spoke to Dr. Archer about Mr. Ruffino before 1254.[1] Dr. Archer provided me with a verbal report of his assessment and of Mr. Ruffino's condition. I performed a prompt evaluation. At the time of my evaluation, the nursing notes were available to me to review.

7. In addition to reports from healthcare providers about Mr. Ruffino's condition, I relied on history given to me by Mr. Ruffino and his wife. According to the history given to me by Mr. Ruffino and his wife, Mr. Ruffino began experiencing facial weakness and some trouble with speech at least as early 0800 on February 17, 2016. When the symptoms began, Mr. Ruffino self-administered 4 or 5 Aspirin 81 mg tablets. The Ruffinos reported to me that Mr. Ruffino had been experiencing events involving speech difficulty, facial weakness, and right-sided weakness for at least the past month. Mr. Ruffino did not report to me that his symptoms had resolved at any time since his presentation to StoneCrest Medical Center on February 17. By the time I was contacted about Mr. Ruffino, he was not a candidate for thrombolytic therapy because it had been at least 4.5 hours since the time Mr. Ruffino himself reported that his symptoms began.

---

[1] The medical records audit shows I reviewed Mr. Ruffino's chart at 1254.

8. Even if I had been contacted about Mr. Ruffino within 4.5 hours of reported onset of his symptoms, I would not have ordered intravenous tissue plasminogen activator (tPA) for Mr. Ruffino based on the Ruffinos' reports to me of his symptoms over the past month. At a minimum, these reports were consistent with recent, prior transient ischemic attacks (TIAs), which differ from a stroke only in the duration of symptoms.

9. Regardless of the timing of onset of Mr. Ruffino's symptoms, he was not a candidate for endovascular thrombectomy. The Guidelines for Management of Acute Ischemic Stroke,[2] released by the American Heart Association and the American Stroke Association, and endorsed by the American Association of Neurological Surgeons and the Congress of Neurological Surgeons, in effect in February 2016 confirm that patients with a National Institute of Health Stroke Scale (NIHSS) score less than 6 are not candidates for endovascular thrombectomy with a stent retriever. This exclusion criteria for endovascular thrombectomy was repeated in the recently-released 2018 guidelines.[3] This criterion does not depend on time of onset of symptoms. The maximum recorded NIHSS score for Mr. Ruffino at StoneCrest Medical Center was 4.

10. To calculate "last known time of normal" for evaluation of tPA administration or endovascular intervention, a patient must be normal when he awakens. A patient that wakes up with a deficit is considered "last normal" at the time the patient went to sleep.

11. To a reasonable degree of medical probability, the care provided to Mr. Ruffino at StoneCrest Medical Center by the healthcare providers complied with

---

[2] *See, e.g.*, 2015 AHA/ASA FOCUSED UPDATE OF THE 2013 GUIDELINES FOR THE EARLY MANAGEMENT OF PATIENTS WITH ACUTE ISCHEMIC STROKE REGARDING ENDOVASCULAR TREATMENT, pages 18 and 26.
[3] *2018 Guidelines for Management of Acute Ischemic Stroke*, Powers, et. al., page e27.

accepted standards of care and was not the proximate cause of any injury that would not otherwise have occurred.

12. All of my opinions contained in this affidavit are to a reasonable degree of medical probability and are based on my personal knowledge.

FURTHER AFFIANT SAY NOT.

_____
SURESH CHITTURI, M.D.

Sworn to and subscribed before me this 20th day of February, 2018.

_____
NOTARY PUBLIC

My commission expires on: June 17, 2018
COUNTY OF Rutherford

[Notary seal: MELINDA EDDY, STATE OF TENNESSEE NOTARY PUBLIC, RUTHERFORD COUNTY]

4