UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE, NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHN RUFFINO and MARTHA RUFFINO, Husband and Wife, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: 3:17-cv-00725 |
| v. | ) ) | Jury Demand |
| DR. CLARK ARCHER and HCA HEALTH SERVICES OF TENNESSEE, INC. d/b/a STONECREST MEDICAL CENTER, | ) ) ) ) | Judge Crenshaw Magistrate Judge Newbern |
| Defendants. | ) ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDIPUTED MATERIAL FACTS**

Pursuant to Fed. R. Civ. P. 56(c) and Local Rule 56.01(c), the Plaintiffs respond as follows to Defendant StoneCrest's Supplemental Statement of Facts in Support of its Motion for Summary Judgment (Dkt. 72):

### INTRODUCTION

A fact is only "material" for the purposes of summary judgment if it must be decided in order to resolve the substantive claim or defense at which the motion is directed. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248. "[T]he substantive law will identify which facts are material." *Id.* Here, the only *material* facts are that the Defendants (1) provided care to Mr. Ruffino below the standard of care, and (2) that caused the Plaintiffs an injury.

### RESPONSES

1. Plaintiffs' Response to the Motion for Summary Judgment was required by December 28, 2017.

   RESPONSE: Objection – this statement is a conclusion of law, not an "undisputed material fact," and as such, it not appropriate for identification in this pleading per Fed. R. Civ. P. 56(c), and no response is required.

2. On December 28, 2017, Plaintiffs submitted the affidavits of Alfred Callahan, M.D. and Troy Pope, M.D. as the substantive response to the pending Motion for Summary Judgment.

   RESPONSE: Denied. It is admitted that Plaintiffs submitted the Affidavits of Alfred Callahan, M.D. and Troy Pope, M.D. as part of the record proof they relied upon to demonstrate the existence of a genuine dispute of material fact requiring a jury trial. It is denied that these Affidavits were the Plaintiffs' only "substantive response." *See* Dkt. 46, 46-1, 46-2, 46-3, 46-4, 46-5, 47, 48, 48-1.

3. The depositions of Alfred Callahan, M.D. and Troy Pope, M.D. were taken on April 18, 2018 and April 23, 2018, respectively.

   RESPONSE: It is admitted that the deposition of Alfred Callahan, M.D. was taken on April 18, 2018. Otherwise, denied. The cited materials do not reflect that Dr. Pope was deposed on April 23, 2018.

4. Troy Pope, M.D. withdrew any and all opinions on causation during his April 23, 2018 deposition.

   RESPONSE: Denied. The cited materials do not reflect that Dr. Pope was deposed on April 23, 2018.

5. Alfred Callahan, M.D testified that use of intravenous tPA never rises to the more probable than not standard.

   RESPONSE: Denied. It is admitted that Dr. Callahan testified that use of tPA *alone* has a rate of effectiveness below 50%. However, Dr. Callahan testified that the alleged breaches of the standard of care – initiation of tPA and transfer to a comprehensive stroke center – have a combined rate of effectiveness above 50%. Deposition of Callahan, Dkt. 73-3 at pp. 36:24-38:3.

6. Dr. Callahan's experience, and the literature, establish that tPA produces benefit for, at best, 30% of the patients who receive the drug.

   RESPONSE: Denied. It is admitted that Dr. Callahan testified that tPA's rate of recanalization (effectiveness) observed in published peer-reviewed studies for the patient populations in those studies were approximately 30-40%. One study, for example, found the observed rate of recanalization to be 37.3%. Deposition of Dr. Callahan, Dkt. 73-3 at p. 51:8-21.

2

7. Based on the literature, twelve (12) patients must be treated with tPA, in order for one to benefit.

   RESPONSE: Denied. The cited testimony does not support the supposed fact. It is admitted that Dr. Callahan elsewhere testified that the rate of recanalization (effectiveness) reflected in the literature is approximately 30-40% for the patient populations in those studies. *See* Defendant's Statement of Undisputed Material Facts #6 and Plaintiffs' response thereto, as well as the Deposition of Dr. Callahan, Dkt. 73-3, at p. 51:8-21.

8. The joint American Heart Association/American Stroke Association Guidelines, in effect at the time of Mr. Ruffino's presentation to StoneCrest Medical Center, required the presence of a 6, or greater, on the National Institutes of Health Stroke Scale [NIHSS] before endovascular embolectomy would be considered.

   RESPONSE: Denied. Pursuant to Fed. R. Civ. P. 56(c)(2), Plaintiffs object that the record material cited to support this supposedly undisputed fact is not admissible. The referenced statement from the AHA/ASA is hearsay, and not otherwise admissible under Fed. R. Evid. 803(18). The referenced statement from the AHA/ASA cannot be introduced as substantive evidence and is not being used for their intended purpose of cross examination, and even if it were, Defendants have not established this "learned treatise" as a reliable authority through the cited deposition testimony.[1]

   Subject to, and without waiving this objection, Defendants' statement mischaracterizes the AHA/ASA Guidelines, including for the following reasons:
   ➢ The AHA/ASA's statement does not use the language of "require" or "requirements." The document is titled a "guideline" and lists a series of non-binding "recommendations." Dr. Callahan testified that the recommendations of that document are not even considered "standards," only "guidelines." Deposition of Dr. Callahan, Dkt. 73-3, at p. 52:4-19.
   ➢ The referenced document states that the use of endovascular therapy with stent retrievers *may be reasonable* for an NIH score of less than 6 when treatment is initiated within 6 hours of symptom onset (p. 3032, #8).[2]

9. Mr. Ruffino never had a NIHSS of 6 or greater during his admission at StoneCrest.

   RESPONSE: Denied. Admitted for the purposes of summary judgment only that the only documented NIHSS stroke score at StoneCrest was below 6. However, when Defendants ultimately transferred Mr. Ruffino (after the window for Mr. Ruffino to receive effective treatment) to a comprehensive stroke center, Mr. Ruffino's stroke score was a 13. *See* Dkt. 83-2, p. 2.

---

[1] Dr. Callahan only testified he was "familiar" with the guidelines, p. 50:10-12, and he only agreed with a specific statement from the guidelines characterizing a trial showing a 37.3% effectiveness rate for tPA alone, p. 51:8-21.
[2] See Dkt. 83-1, p. 13.

3

10. The affidavit of Dr. Pope, Plaintiffs' only standard of care witness, includes nothing to support the claim that StoneCrest failed to obtain a timely neurology consult.

    RESPONSE: For purposes of summary judgment only, admitted with the following qualifications: Dr. Pope's Affidavit indicates that Dr. Archer failed to timely initiate tPA and arrange for transfer to a comprehensive stroke center. Dkt. 46-1, ¶¶ 12-13. While seeking a consult with a neurologist was not itself a violation of the standard of care, Dr. Pope testified that delaying stroke treatment required of an ER physician so that a neurologist could be consulted would violate the standard of care. Deposition of Dr. Pope, Dkt. 73-2, at pp. 36:9-37:3.

11. The affidavit of Dr. Pope, Plaintiffs' only standard of care witness, includes nothing to support the claim that StoneCrest did not act in a timely fashion leading to the ordering of an [sic] MRI of the brain for Mr. Ruffino.

    RESPONSE: Admitted for the purposes of summary judgment only.

12. The affidavit of Dr. Pope, Plaintiffs' only standard of care witness, includes nothing to support the claim that StoneCrest did not act in a timely fashion leading to the ordering of a CTA for Mr. Ruffino.

    RESPONSE: Admitted for the purposes of summary judgment only.

13. During his deposition, Dr. Pope, Plaintiffs' only standard of care witness, confirmed that he has no criticisms of the care provided by the StoneCrest nurses.

    RESPONSE: Denied. In his deposition, Dr. Pope adopted and confirmed his standard of care opinions set forth in his Rule 26 Report, which was marked as Exhibit 4 thereto. Deposition of Dr. Pope, Dkt. 73-2, at p. 14:7-14, Exhibit 4 (Dkt. 83-3). On page 6 of his Rule 26 Report, Dr. Pope states that "…If Nurse Bromley did not communicate to Dr. Archer that John Ruffino had the acute onset of new neurologic deficits sometime between 1200 and 1300, this also does not meet the standard of care."[3]

    When asked about his opinions regarding the standard of care provided the same response in his deposition (p. 107:1-6):
    Mr. Carter:   You don't have any criticism of the care provided by the nurses at StoneCrest, do you?
    Dr. Pope:   I only have one potential criticism, and that is there's various opinions of what exactly happened. But if Nurse Bromley failed to report symptoms to Dr. Archer, I think that is a deviation as well.

    There is conflicting deposition testimony from the fact witnesses regarding the facts necessary to determine whether Nurse Bromley complied with what Dr. Pope testified was required of him by the standard of care:

---

[3] *See* Dkt. 83-3 (p. 6 per internal page numbers / p. 7 per CM/ECF)

- Nurse Bromley says he communicated to Dr. Archer that Mr. Ruffino was neurologically normal from 10:00 am to 12:00 am on February 18, 2016:

    | | |
    |---|---|
    | Mr. Cummings: | Did you let Dr. Archer know when he first saw Mr. Ruffino and was requesting a neuro consult, that per your neuro checks, the patient had been neurologically normal from 10:00 a.m. to noon? |
    | Nurse Bromley: | Yes. |
    | Mr. Cummings: | You told Dr. Archer that? |
    | Nurse Bromley: | Yes.[4] |

- Dr. Archer testified that he does not remembering being told any such thing.[5]

Pursuant to Fed. R. Civ. P. 56(c)(2), Plaintiffs object that the testimony cited by Defendants from Dr. Pope's deposition at 107:11 to 108:11 is inadmissible. Dr. Pope's agreement about what the fact witnesses said in their depositions was in response to and based upon an inadvertent misrepresentation/confusion of the facts in the questions presented by Mr. Carter. Specifically, Mr. Carter glossed over the material inconsistency in the sworn accounts of Nurse Bromley and Dr. Archer (referenced above) and made it appear that Dr. Archer's testimony actually *corroborated* Nurse Bromley's account of what he communicated to Dr. Archer:

| Mr. Carter's Characterizations of the Testimony (107:20-108:1) | Dr. Archer's Actual Testimony (68:11-69:5) |
|---|---|
| Mr. Carter: And you recall that Nurse Bromley testified that he communicated the patient's status to Dr. Archer?<br>Dr. Pope: Correct.<br>Mr. Carter: You also told us that you reviewed Dr. Archer's deposition?<br>Dr. Pope: Correct.<br>Mr. Carter: And you recall from review of that deposition that he testified that he spoke with Nurse Bromley?<br>Dr. Pope: Correct.<br>Mr. Carter: Assuming those two people are telling the truth, you don't have any criticism of the care provided by Nurse Bromley?<br>Dr. Pope: Correct. | Mr. Cummings: What did Nurse Bromley tell you on February 17, 2016 about what he knew regarding Mr. Ruffino's history or problems?<br>Dr. Archer: I don't know that I can recall any definite exact discussions. I do know the patient presented by ambulance. Again, this may or may not be from Tony, and the initial presentation was dizziness. And I guess we can addendum seizure on the differential by the way. But concerns of a man that is dizzy, with a history of seizures, that did not take his Neurontin that day.<br>Mr. Cummings: Do you remember anything else Nurse Bromley told you on February 17, 2016, and by told you I mean orally, and I think you knew that --<br>Dr. Archer: Yes, sir.<br>Mr. Cummings: regarding Mr. Ruffino?<br>Dr. Archer: I truly cannot state. I cannot recollect. |

---

[4] Deposition of Nurse Bromley, Dkt. 48-1, at p. 123:2-9.
[5] Deposition of Dr. Archer, at p. 68:11-69:5. All cited excerpts are attached hereto as **Exhibit 1**.

5

To Mr. Carter's credit, a jury *could* determine that Nurse Bromley and Dr. Archer's testimony were not inconsistent, if the jury also determined that Nurse Bromley was telling the truth and Dr. Archer did not recall the conversation because he forgot it. Conversely, the jury could also determine that Dr. Archer has no recollection of the conversation claimed by Nurse Bromley because it did not occur. The jury will have to determine this unresolved factual issue. Dr. Pope's role is to assist the jury determine what the standard of care required of Nurse Bromley within the context of the facts the jury decides to credit. Dr. Archer's factual testimony creates a genuine dispute of fact that Nurse Bromley failed to communicate to Dr. Archer that Mr. Ruffino was neurologically normal from 10:00 am to 12:00 am on February 18, 2016 such that the stroke symptoms Mr. Ruffino demonstrated shortly thereafter were "acute onset." If the jury credits Dr. Archer instead of Nurse Bromley, Dr. Pope's testimony demonstrates Nurse Bromley's failure to communicate this information was a breach of the standard of care.

14. During his deposition, Dr. Pope, Plaintiffs' only standard of care witness, confirmed that he has no criticisms of StoneCrest for not having proper policies and procedures in place.

    RESPONSE: Admitted for the purposes of summary judgment only.

**RESPECTFULLY SUBMITTED,**

 s/ Mark Hammervold
**Brian Cummings, #19354**
**Brian P. Manookian, #26455**
**Afsoon Hagh, #28393**
Cummings Manookian PLC
45 Music Square West
Nashville, Tennessee 37203
(615) 266-3333 (phone)
(615) 266-0250 (fax)
bcummings@cummingsmanookian.com
bmanookian@cummingsmanookian.com
afsoon@cummingsmanookian.com

**Mark Hammervold, #31147**
Hammervold, PLC
315 Deaderick Street, Suite 1550
Nashville, TN 37238
(615) 928-2466 (phone)
(615) 928-2264 (fax)
mark@hammervoldlaw.com

*Attorneys for Plaintiffs*

6

## **CERTIFICATE OF SERVICE**

I certify that I served all parties in this matter through counsel of record listed below with the foregoing by CM/ECF on May 11, 2018:

| | |
|---|---|
| James E. Looper, Jr.<br>Hall Booth Smith, PC<br>Fifth Third Center<br>424 Church Street, Suite 2950<br>Nashville, TN 37219<br>(615) 313-9911 (phone)<br>(615) 313-8008 (fax)<br>jlooper@hallboothsmith.com<br><br>*Counsel for the Defendant*<br>*Dr. Clark Archer* | C.J. Gideon, Jr.<br>J. Blake Carter<br>Gideon Cooper & Essary<br>315 Deaderick Street, Suite 1100<br>Nashville, TN 37238<br>(615) 254-0400 (phone)<br>(615) 254-0459 (fax)<br>cj@gideoncooper.com<br>blake@gideoncooper.com<br><br>*Counsel for the Defendant*<br>*HCA Health Services of Tennessee, Inc.*<br>*d/b/a StoneCrest Medical Center* |

   s/ Mark Hammervold
**Mark Hammervold**

7

Case 3:17-cv-00725   Document 84   Filed 05/11/18   Page 7 of 7 PageID #: 1081