IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN RUFFINO, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) NO. 3:17-cv-00725 |
| | ) JUDGE CAMPBELL |
| DR. CLARK ARCHER, et al. | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

Pending before the Court is a Motion to Strike (Doc. No. 74) filed by Defendant HCA Health Services of Tennessee, Inc. ("HCA"). HCA asks the Court to strike the Affidavits of Plaintiffs' expert witnesses that were filed in opposition to summary judgment.

BACKGROUND

This action alleges medical malpractice by Defendants against Plaintiff John Ruffino. In the Amended Complaint, Plaintiffs allege that both Defendants Dr. Clark Archer and StoneCrest Medical Center[1] were negligent in their care and treatment of Mr. Ruffino when he was in the Emergency Room ("ER") at Stonecrest Medical Center on February 17, 2016. Plaintiffs contend that Defendants failed to comply with the applicable standard of care for acceptable professional practice and that Defendants' negligence directly and proximately caused serious injury and damages to Mr. Ruffino.

---

[1] Plaintiffs sued Dr. Archer and HCA Health Services of Tennessee, Inc. d/b/a Stonecrest Medical Center.

In response to HCA's Motion for Summary Judgment, Plaintiffs filed affidavits from Dr. Troy Pope (Doc. No. 46-1), a doctor of emergency medicine, and Dr. Alfred Callahan (Doc. No. 46-2), a neurologist. Dr. Pope offers opinions on the standard of care for emergency room care and treatment, and Dr. Callahan offers opinions on the issue of causation. HCA contends that these witnesses have either withdrawn their opinions at their depositions or those opinions are demonstrably unreliable. This case is in the unusual posture of having a motion for summary judgment filed before depositions were taken. The affidavits at issue were filed before the expert witnesses were deposed.

## EXPERT TESTIMONY

Under Fed. R. Evid. 702, a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

District courts serve as "gatekeepers" with regard to proffered expert testimony and possess broad discretion to make admissibility determinations. *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007). A trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 113 S.Ct. 2786, 2795 (1993). Under *Daubert*, the proponent of an expert witness must demonstrate that (1) the witness is qualified by knowledge, skill, experience, training or education, (2) the testimony of that expert witness is relevant, meaning that it will assist the trier of fact to understand the evidence

2

or to determine a fact in issue, and (3) the testimony of that expert witness is reliable. *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 529 (6th Cir. 2008). When an expert's opinion is challenged, the court must determine whether the opinion is based on trustworthy facts or data sufficient to provide some basis for the opinion. *Church v. Perales*, 39 S.W.3d 149, 166 (Tenn. Ct. App. 2000). The Court does *not* judge the expert's credibility or determine the evidentiary weight that should be given to his or her opinion. *Id*.

## DRS. POPE AND CALLAHAN

Under what has come to be called the "sham affidavit doctrine," after a motion for summary judgment has been made, a party may not file an affidavit that contradicts his *earlier* sworn testimony. *France v. Lucas*, 836 F.3d 612, 622 (6th Cir. 2016). The rationale behind this doctrine is that if a party who has been examined at length, under oath, could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, it would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact. *Id*. (citing *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir. 1986)). Here, the affidavits are the "earlier sworn testimony," not the depositions, and yet it is the affidavits which HCA asks the Court to strike. The witnesses here were examined at length, under oath, *after* they filed their affidavits.[2] Affidavits can be considered unless they directly contradict *prior* deposition testimony or are injected into the proceedings merely to avoid summary judgment. *Lannello v. American Gen. Life Ins. Co.*, 298 F.Supp.3d 1133, 1138 (M.D. Tenn. 2018) (citing *France*).

---

[2] In *France*, the situation was also different from the usual application of the rule. An affidavit from one defendant, which directly contradicted his prior sworn testimony, was submitted by the plaintiff to defeat summary judgment motions from other defendants. *France*, 836 F.3d at 623.

The Court need not decide whether the rule should be applied, under the circumstances of this case, where the later testimony is a deposition, not an affidavit.[3] In deciding whether to strike the affidavits (or the depositions) at issue, the Court must first determine whether the two directly contradict each other. *Aerei, S.R.I. v. PCC Airfoils, LLC*, 448 F.3d 899, 908 (6th Cir. 2006). In this case, they do not.

Dr. Pope

HCA first challenges Dr. Pope's opinions because he allegedly did not review any medical records of Mr. Ruffino predating his ER visit to Stonecrest. HCA also contends that Pope's affidavit should not be considered because he admitted that he did not rely upon the articles attached thereto. Dr. Pope testified that there were no facts *in his executive summary* that predate the presentation to StoneCrest and that the relevant facts to the performance of an ER doctor begin when the patient presents to the emergency department. (Doc. No. 73-2 at 29 (dep., p. 114)). The Sixth Circuit has allowed expert physician testimony without a full review of a plaintiff's medical records. *Harms v. United States*, 2017 WL 3642202 at * 10 (E.D. Mich. Aug. 24, 2017) (citing *Laski v. Bellwood*, 1997 WL 764416 at * 4 (6th Cir. Nov. 26, 1997)). These arguments about what Dr. Pope did or did not review go to the weight of Dr. Pope's opinions, not their admissibility.

HCA also argues that Dr. Pope changed his opinion about tPA[4] because he stated in his deposition that there is no evidence that tPA would have improved Mr. Ruffino's outcome. Dr. Pope actually testified that less than 40 percent of patients have improved from tPA *alone*. (Doc. 73-2 at

---

[3] The Court would have to consider, for example, whether the deposition, since it was later, should be stricken, not the affidavit.

[4] tPA is "tissue plasminogen activator," a treatment for thrombotic stroke. (Doc. No. 61 at 7).

23 (dep., p. 89)). He went on to say that patients receiving appropriate comprehensive stroke care, which includes initially tPA, followed by transfer to a stroke center, have improved outcomes. *Id*. In his Affidavit, Dr. Pope stated the same thing: "Dr. Archer was required under the standard of care to initiate the administration of tPA *and* arrange for transfer to a comprehensive stroke center for additional treatment, which likely would have included an endovascular thrombectomy." (Doc. No. 46-1, ¶ 12 (emphasis added)). The Court finds these statements are not contradictory.

HCA contends that Dr. Pope's opinions are not reliable because he did not review records to establish the time Mr. Ruffino's stroke began. Dr. Pope did review the medical records from StoneCrest and the testimony of Nurse McCulloch and Nurse Bromley, all of which indicated that Mr. Ruffino was neurologically normal from 0949 until 1200 in the ER on February 17, 2016. HCA disagrees with those facts, but it is not unreasonable for Dr. Pope to rely on StoneCrest's own medical records and the testimony of its own employees in opining as to the time of onset. The jury will determine which version of these facts to credit and which expert's opinion on which to rely.

Plaintiffs agree that Dr. Pope cannot offer causation opinions (Doc. No. 83 at 1), so those opinions will not be considered. Because the deposition testimony of Dr. Pope does not directly contradict his prior affidavit, HCA's Motion to Strike his Affidavit will be denied.

<u>Dr. Callahan</u>

HCA challenges Dr. Callahan's opinions, as with Dr. Pope's, based on his alleged review of incomplete data. As indicated above, the Sixth Circuit has allowed expert physician testimony without a full review of a plaintiff's medical records. *Harms* at * 10; *Laski,* at * 4. In *Laski*, the court stated:

5

> Medical diagnoses and treatments are, however, commonly and appropriately made without the luxury of detailed medical histories. Opinions rendered on questions of health, possible causes of maladies, and their treatments are, nevertheless, still routinely offered in federal courts pursuant to the standards of Federal Rules of Evidence 702 and 703. In those instances, as in this case, the incomplete bases for the expert testimony are subject to the crucible of cross-examination and affect the weight properly given to the scientific or medical evidence, not the admissibility of such information at trial.

*Laski* at * 4 (cited in *Harms* at *10). HCA's arguments about what Dr. Callahan did and did not review may be the subject of cross-examination and go to the weight of the evidence, not its admissibility.

Dr. Callahan has admitted that he is not expressing standard of care opinions. (Doc. No. 73-3 at 13 (dep., p. 49)), so those opinions will not be considered. HCA argues that Dr. Callahan admitted he was not up-to-date on endovascular thrombectomy treatment guidelines, citing page 39 of his deposition. What Dr. Callahan stated at that point in the deposition, however, is that he had not performed an endovascular procedure at Centennial Medical Center since he stopped doing the intra-arterial thrombolytic procedure about 2001, after having done more than 400 such cases. (Doc. No. 73-3, (dep., p. 39)).

HCA also contends that Dr. Callahan's opinions about the efficacy of an endovascular thrombectomy are not reliable because Mr. Ruffino did not meet the inclusion criteria for endovascular intervention. Counsel is relying upon guidelines published by the American Heart Association, American Stroke Association, which counsel identified as "standards" and Dr. Callahan identified as guidelines: "They're not considered standards." (Doc. No. 73-3, (dep., p. 52)). Dr. Callahan sufficiently explained his understanding of and disagreement with portions of those

6

guidelines.[5] *(Id*. at 51-54). That he did not consider them to be standards does not render his testimony so unreliable that it should be excluded altogether. The Court finds Dr. Callahan's opinions, based upon his education, training and experience, concerning the efficacy of an endovascular thrombectomy are sufficiently reliable. HCA may cross-examine on this issue and the trier of fact will determine the weight to be given the various opinions.

HCA also argues that, as with Dr. Pope, Dr. Callahan changed his opinion regarding tPA from his affidavit until his deposition. Dr. Callahan testified that only thirty percent of patients would benefit from intravenous tPA *alone*. (Doc. No. 73-3 at 9 (dep., p. 34)). He testified that in order for Mr. Ruffino to benefit, he would have required intravenous tPA *plus* endovascular intervention or endovascular intervention without IV tPA. *(Id*. at 10 (dep., p. 37)). In his affidavit, he stated that had Dr. Archer administered IV tPA *and* arranged for transfer to a comprehensive stroke center, which likely would have led to an endovascular thrombectomy, Mr. Ruffino would have had a better outcome. (Doc. No. 46-2 at 4-5). As with Dr. Pope, the deposition testimony does not directly contradict his affidavit. HCA's Motion to Strike the Affidavit of Dr. Callahan will be denied.

## CONCLUSION

For all these reasons, HCA's Motion to Strike will be denied.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[5] HCA's assertion that "the published literature unequivocally establishes" that Mr. Ruffino was not a candidate for an endovascular thrombectomy is obviously disputed by Plaintiffs and their experts.