IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN RUFFINO, et al., | ) |
|     Plaintiffs, | ) |
| v. | ) NO. 3:17-cv-00725 |
| | ) JUDGE CAMPBELL |
| DR. CLARK ARCHER, et al. | ) |
|     Defendants. | ) |

## MEMORANDUM

Pending before the Court is a Motion for Summary Judgment filed by Defendant HCA Health Services of Tennessee, Inc. ("HCA"). (Doc. No. 38). For the reasons stated herein, HCA's Motion for Summary Judgment is denied.

### INTRODUCTION

In this health care liability action, Plaintiffs allege that Defendant HCA d/b/a StoneCrest Medical Center, through its employees and agents, was negligent in its care and treatment of John Ruffino on February 17, 2016. Plaintiffs contend that the ways HCA's employees and agents failed to comply with the acceptable standard of care include:

    (1) not providing proper care and treatment to Mr. Ruffino during his ER presentation;

    (2) not effectively communicating with a physician that Mr. Ruffino was neurologically normal from 0949 to 1200;

    (3) not timely acting to lead to the ordering of a neurology consult for Mr. Ruffino;

    (4) not timely acting to lead to the ordering of an MRI of the brain for Mr. Ruffino;

    (5) not timely acting to lead to the administration of tPA for Mr. Ruffino;

(6) not timely acting to lead to the ordering of a thrombectomy to be performed on Mr. Ruffino;

(7) not following StoneCrest's written policies and procedures as applied to the work-up, diagnosis and treatment of ER patients with a suspected stroke;

(8) not timely diagnosing Mr. Ruffino with a thrombotic stroke; and

(9) not timely arranging for treatment of Mr. Ruffino's thrombotic stroke.

(Doc. No. 61). Plaintiffs also contend that HCA is vicariously liable for the alleged negligence of Defendant Archer.

HCA seeks summary judgment by arguing the undisputed facts establish that it complied with accepted standards of care and did not cause any injury to Mr. Ruffino that would not otherwise have occurred. (Doc. No. 38).

## MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*.

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the

2

evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

## HEALTH CARE LIABILITY ACTIONS

Tennessee law provides that a "health care liability action" includes any civil action alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based. Tenn. Code Ann. § 29-26-101(a)(1). In such an action, the claimant has the burden of proving:

(1) the recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) that the defendant acted with less than, or failed to act with, ordinary and reasonable care in accordance with such standard; and

(3) as a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115(a).

Each of the elements of a health care liability action must be established by expert testimony. *Mitchell v. Jackson Clinic, P.A.*, 420 S.W.3d 1, 6 (Tenn. Ct. App. 2013). In addition, the expert witness must (1) be licensed to practice in Tennessee or one of its eight contiguous bordering states; (2) practice a procession or specialty which would make his or her expert testimony relevant to the

3

issues in the case; and (3) have practiced this profession or specialty in one of these states during the year preceding the date of the alleged injury or wrongful act. *Id*. (citing Tenn. Code Ann. § 29-26-115(b)).

ANALYSIS

HCA has moved to strike the affidavits of Plaintiff's experts, Dr. Callahan and Dr. Pope, and the Court is denying that motion by contemporaneous Order.

In this case, there are material issues of fact that underlie the competing experts' testimony. For example, HCA asserts (and Plaintiffs agree) that Mr. Ruffino was transported to StoneCrest with a complaint of dizziness. (Doc. No. 47, ¶ 12). HCA contends that Mr. Ruffino's reported symptoms upon arrival to the ER were dizziness and/or seizures, neither of which is an indication of a stroke. *(Id.*, ¶ 26; Doc. No. 39 at 8-9). HCA also contends, however, that Mr. Ruffino later reported to his physician at Centennial Medical Center (*see* Doc. No. 41-1, Ex. B), that he had awakened with right facial weakness, facial droop, slurred speech and expressive aphasia first thing on the morning of February 17, 2016. (Doc. No. 47, ¶ 13). Mr. Ruffino disputes this statement, and the StoneCrest nurses disagree with this statement. (*Id.*);[1] HCA's experts, based upon this information from Centennial Medical Center, conclude that Mr. Ruffino's last known time of normal was when he went to bed on the night of February 16, 2016. (Doc. No. 47, ¶ 24). The parties agree that a patient who wakes up with a neurological deficit is considered "last normal" at the time he went to sleep. (Doc. No. 47, ¶ 23). The parties disagree about when Mr. Ruffino was last neurologically normal on

---

[1] The Centennial record indicates that Mr. Ruffino presented to the StoneCrest ER with right facial weakness and droop wit slurred speech with some expressive aphasia. (Doc. No. 41-1, Ex. B). It also states: "The history, patient woke up with above listed symptoms in the morning." (*Id*.) The StoneCrest nurses testified otherwise.

4

February 17, 2016. (*Id*., ¶ 24). Because there are questions of fact about Mr. Ruffino's medical condition when he arrived at the ER, there are disagreements as to the proper standard of care required for his treatment and care.

Plaintiffs assert that Mr. Ruffino was "neurologically normal" between 9:49 a.m., and 12 noon on February 17, 2016. They base this factual assertion on medical records from StoneCrest and deposition testimony from two nurses involved with Mr. Ruffino's care in the StoneCrest ER. (Doc. No. 46-1 at ¶ 10; Doc. No. 46-2 at ¶ 15). The nurse who did the initial ER assessment of Mr. Ruffino, Carol McCullough, testified that she observed *no* neurological deficits during her initial assessment of Mr. Ruffino. (Doc. No. 46-4 at 7-9 (dep., pp. 22-23 and 28-29)). Moreover, there are no neurological deficits documented in her medical record for Mr. Ruffino. (*Id*.) McCullough testified that Mr. Ruffino reported having dizziness while he was driving, but he did not complain of dizziness in the ER. (*Id*. at 6 (dep., pp. 17-19)). She reported that Mr. Ruffino was relatively normal at the time of her assessment at about 9:56 a.m. and she did not think he was having a stroke. (*Id*. at 8 (dep., pp. 25-28)).

Similarly, Nurse Robert Bromley, who began caring for Mr. Ruffino in the ER at 10 a.m., testified that all Ruffino's neurological signs or symptoms were normal at 10 a.m. (Doc. No. 46-5 at 4 (dep., pp. 55-56)); at 10:08 a.m. (*Id*. at 5 (dep., p. 58)); at 10:15 a.m. (*Id*. at 11 (dep., p. 92)); at 10:30 a.m. (*Id*.); at 10:45 a.m. (*Id*. at 12 (dep., p. 94)); at 11 a.m. (*Id*. (dep, p. 95)); and at noon. (*Id*.) Plaintiffs assert that Mr. Ruffino had *new* stroke symptoms at 12:20, when he was first seen by Dr. Archer. The parties disagree about whether Dr. Archer knew that Mr. Ruffino was neurologically normal from 10 a.m. until noon. Nurse Bromley testified that he let Dr. Archer know that, per his neuro checks, Ruffino had been neurologically normal from 10 a.m. until noon. (Doc. No. 48-1 at

5

5 (dep., p. 123)). Dr. Archer testified that he does not remember any exact discussions with Bromley from that day. (Doc. No. 84-1 at 10-11 (dep., pp. 68-69)).

The experts also disagree about whether administration of tPA and a thrombectomy were appropriate treatments for Mr. Ruffino. And which expert one believes depends, in large part, on which version of the facts one accepts as true. The experts are relying upon different facts to assert their opinions, and the testimony of the nurses and some of the records at StoneCrest conflict with the records at Centennial. The Court cannot make these factual determinations on the current motion.[2]

HCA argues there is no genuine issue of material fact as to whether it could have done anything that would have changed the outcome for Mr. Ruffino. The medical experts disagree as to the consequences of what Defendants did and/or did not do. HCA's experts opined that no action or inaction by any healthcare provider at StoneCrest was the cause of any injury to Plaintiffs that would not otherwise have occurred. (Doc. No. 40, ¶ 36). Plaintiffs' experts, on the other hand, opined that had HCA and/or Dr. Archer provided appropriate treatment (tPA and transfer to a comprehensive stroke center) within at least six hours of the stroke symptoms at 12:20, Mr. Ruffino would have had a better outcome from his stroke. (Doc. No. 46-1, ¶¶ 15 and 19; Doc. No. 46-2, ¶¶ 12-13).

HCA points out that Mr. Ruffino had a magnetic resonance angiogram ("MRA") of his brain on December 23, 2015, at University Medical Center in Lebanon. (Doc. No. 47, ¶ 3). That MRA

---

[2] When an expert's opinion is challenged, the court must determine whether the opinion is based on trustworthy facts or data sufficient to provide some basis for the opinion. *Church v. Perales*, 39 S.W.3d 149, 166 (Tenn. Ct. App. 2000). The Court does *not* judge the expert's credibility or determine the evidentiary weight that should be given to his or her opinion. *Id*.

indicated blockage in Mr. Ruffino's left middle cerebral artery ("MCA"). (*Id.*, ¶ 4). The left MCA was either completely occluded in the distal M1 segment or 99% stenosed, and there was no appreciable flow through the M1 segment of the MCA. (*Id.*, ¶¶ 5-6). Plaintiffs do not dispute these facts.

Dr. Dodds, HCA's expert, testified that given the long-standing complete or nearly complete occlusion in the M1 segment of Mr. Ruffino's left MCA, a thrombectomy would not have been an appropriate treatment for him. (Doc. No. 41-2, ¶ 16). In fact, Dr. Dodds opines that no intervention was appropriate or indicated for Mr. Ruffino on the morning of February 17, 2016. (*Id.*) Dr. Dodds stated that treatment of such an occlusion with tPA does not offer any assurance of improvement in outcome. (*Id.*, ¶ 17.)[3] HCA contends that the defining material fact in this case is that Mr. Ruffino's left MCA was blocked before he presented to the StoneCrest ER on February 17, 2016 and nothing could have been done to change his condition.

Plaintiffs and their experts dispute this opinion. (Doc. No. 47, ¶¶ 28-35; Doc. No. 46-2, ¶¶ 14 and 16). Dr. Pope stated: "Regardless of what segment of the vascularization of the brain the occlusion was in that was causing the stroke that afternoon, my opinion remains that had the treatment referenced herein been provided within at least 6 hours of Dr. Archer first seeing the patient at approximately 1220, Mr. Ruffino would have had a better outcome." He also opined that had tPA been administered and transfer to a comprehensive stroke center been arranged, the increased blood flow via such treatment being provided within 6 hours would have likely limited or

---

[3] It is not disputed that a CT angiogram performed at StoneCrest on the afternoon of February 17, 2016, demonstrated an occlusion of the M1 segment of the left MCA. (Doc. No. 47, ¶ 15).

prevented the permanent brain injury that occurred. (Doc. No. 46-1, ¶¶ 17 and 19). Dr. Callahan agrees with Dr. Pope. (Doc. No. 46-2, ¶¶ 14 and 16).

HCA contends that Plaintiffs have no admissible causation evidence. As indicated above, Plaintiffs bear the burden of establishing that as a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred. Tenn. Code Ann. § 29-26-115(a). To prove causation, Plaintiffs must show that Mr. Ruffino's injuries were "more likely than not" caused by the negligent actions of the Defendants. *McClain v. United States*, 996 F.Supp.2d 683, 692 (M.D. Tenn. 2014) (citing *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598-99 (Tenn. 1993)). Proof of causation equating to a "possibility," a "might have," "may have," or "could have" is not sufficient, as a matter of law to establish the required nexus between the plaintiff's injury and the defendant's tortious conduct. *Holmes v. Christ Cmty. Health Servs., Inc.*, 2016 WL 6958727 at * 6 (Tenn. Ct. App. Nov. 29, 2016) (citing *Kilpatrick*, 868 S.W.2d at 601-02).

Plaintiff's expert, Dr. Callahan stated in his Affidavit that, had Dr. Archer taken action to assure the proper treatment, Mr. Ruffino "likely would have had a better outcome." (Doc. No. 46-2, ¶ 12). He also said that, had those things been done, Mr. Ruffino "would have had a better outcome from his stroke." (*Id.*) He opines that timely treatment for the stroke with tPA and an endovascular thrombectomy would help to improve blood flow through the blood vessel that was not receiving proper blood flow. (*Id.*, ¶ 14). He stated that timely treatment would have improved the blood flow through the vessel that was experiencing a decreased amount of blood flow and thus causing the stroke. (*Id.*, ¶ 16).

HCA may be able to show that Dr. Callahan's opinion on this subject is wrong, but that does not make his opinion inadmissible. The jury may find that Dr. Callahan is correct. Whether the pre-

8

existing occlusion precluded the effectiveness of *any* treatment is disputed by the experts in this case. Either way, the Court finds that the issue of causation comes down to a battle of the experts, and the Court cannot determine which to believe at this stage.

HCA asserts, in its Supplemental Memorandum (Doc. No. 71), that Dr. Archer was not an employee of StoneCrest. It cites to Archer's deposition for this statement, but Archer's deposition indicates that he was not sure whether he was an employee of StoneCrest/HCA. (Doc. No. 84-1 at 6-7 (dep., pp.15-16)). The Amended Complaint alleges that Dr. Archer is an agent, employee and/or servant of StoneCrest. (Doc. No. 61, ¶ 9). HCA has not shown that it is entitled to summary judgment on this issue.

Because Dr. Pope does not criticize StoneCrest with regard to certain sub-parts of Plaintiffs' negligence claim, HCA asks the Court to dismiss those sub-parts. The Court will not break up Plaintiffs' claim in this way. The jury will determine one question about negligence: Was HCA/StoneCrest negligent in its treatment and care of Mr. Ruffino? The parties may stipulate certain facts, or HCA may point out at trial that Dr. Pope failed to criticize these acts/inactions. The Court, however, will not rule on this claim piecemeal.

CONCLUSION

For all these reasons, HCA's Motion for Summary Judgment is **DENIED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE