**Collective Exhibit 1 to MIL 2**

2018 WL 795506
Only the Westlaw citation is currently available.
United States District Court, W.D.
Tennessee, Western Division.

Charles Mark MCDANIEL, and his
wife, Melody McDaniel, Plaintiffs,
v.
UT MEDICAL GROUP, INC., Defendant.

16-cv-2895-TMP
|
Signed 02/08/2018

## ORDER GRANTING DEFENDANT'S MOTION TO EXCLUDE DR. MICHAEL ROBERTS

TU M. PHAM, United States Magistrate Judge

*1 Before the court is defendant UT Medical Group, Inc.'s ("UTMG") motion to exclude the expert testimony of Michael Roberts, M.D., filed on November 3, 3017. (ECF No. 40.) Plaintiffs Charles Mark McDaniel and Melody McDaniel filed a response on November 17, 2017. (ECF No. 41.) UTMG filed a reply on December 7, 2017. (ECF No. 44.)

The court has considered the briefs submitted in support of and in opposition to the motion and their attached exhibits. For the reasons provided below, UTMG's motion is GRANTED.

### I. BACKGROUND

The McDaniels allege that in 2009, a UTMG surgeon working at Baptist Memorial Hospital, Stephen Behrman, M.D., provided medical treatment to Mr. McDaniel of a quality that "fell below the recognized standard of acceptable professional practice for physicians in Shelby County, Tennessee and similar communities." (ECF No. 1 at 6.) Specifically, they allege that Dr. Behrman failed to provide appropriate post-operative treatment for Mr. McDaniel during his recovery from a surgery for a ventral hernia repair. (Id. at 5 to 7.) The McDaniels claim that Dr. Behrman's alleged negligence has caused them physical, mental, emotional, and financial harm. (Id. at 7 to 8.) They seek compensatory damages. (Id.)

In the instant motion, UTMG asks that the court exclude one of the McDaniels' proposed expert witnesses, Dr. Michael Roberts. (ECF No. 40-2 at 5.) UTMG argues that Dr. Roberts should be excluded because he has failed to demonstrate that he is sufficiently familiar with the Memphis medical community or a similar community so as to be able to testify about the standard of acceptable professional practice in Memphis, Tennessee.

The McDaniels counter that UTMG is relying on "outdated case law" and that the court should examine the matter through the lens of the Tennessee Supreme Court case of Shipley v. Williams, 350 S.W.3d 527 (Tenn. 2011). (ECF No. 41 at 2 to 3.) They claim that, under the "relaxed" Shipley standard, Dr. Roberts has demonstrated adequate familiarity with the Memphis medical community in three ways. (Id.) First, they argue, he has demonstrated that he is familiar with the Memphis medical community because he is familiar with Milledgeville, Georgia. To make their point, the McDaniels offer this syllogism: (1) Dr. Roberts has testified Milledgeville has a similar standard of care to Dyersburg, Tennessee; (2) Dr. Behrman has testified Dyersburg has a similar standard of care to Memphis; and therefore, (3) Milledgeville must have a similar standard of care to Memphis. (ECF No. 41 at 5.) To support this argument, the McDaniels point to the deposition of Dr. Behrman, which states, in applicable part, as follows:

Q: Do you know surgeons from other parts of Tennessee, like Dyersburg or Jackson or Nashville?

A: Yes.

Q: Do you have occasion to talk to them about their surgical practice and how they do things?

A: Yes.

Q: Do you know any surgeons in other states?

A: Yes.

Q: Do you know any surgeons in Georgia?

A: Yes.

Q: Any surgeons in Missouri?

\*2  A: Yes.

Q: When you've spoken to them about their surgical practices, have there ever been anything that you've determined was different about how they practiced medicine there?

A: No.

Q: And you filed an Affidavit in this case, and we'll get to that, but you claimed to be familiar with the standard of care for surgeons here in Memphis and Shelby County.

A: Yes.

Q: Do you believe there's a national standard of care for ventral hernia repairs?

A: I would say so, yes.

....

Q: And in talking to surgeons in Dyersburg or Jackson, you don't think the standard of care for ventral hernia repairs there is any different than it is in Memphis?

A: I mean, techniques, mesh types might be different, but I think the standard of care would be similar.

Q: Assuming similar treatment capabilities and access to devices and things, correct?

A: Yes.

(Behrman Dep. 19:16–21:16, Dec. 21, 2011, ECF No. 41-2 at 4 to 9.)

To further bolster this argument, the McDaniels highlight Dr. Behrman's testimony that he believed other much smaller communities share a similar standard of care with Memphis:

Q: Were you of the opinion that the standard of care in Memphis is the same as the standard of care in Chattanooga?

A: Yes.

....

Q: Did you actually go to Chattanooga to testify?

A: It's actually some little town outside of Chattanooga in the middle of nowhere.

Q: Franklin County. Is it Cleveland?

A: No, it's even smaller. I mean, it is—I mean, it's Mayberry. I mean, it's tiny.

Q: But you still had the opinion that the standard of care in Memphis was no different from the standard of care in that city?

A: True.

....

Q: Did you believe the standard of care in Springfield, Missouri was the same as Memphis, Tennessee?

A: I did.

(Behrman Dep. 92:20–94:17; ECF No. 41 at 5.)

Alternatively, the McDaniels argue Milledgeville and Memphis are similar because Dr. Roberts testified that the Milledgeville-located Oconee Regional Medical Center and the Memphis-located Baptist Memorial Hospital are similar. (ECF No. 41 at 6.) Finally, they argue that Dr. Roberts's internet research of Baptist Memorial Hospital has provided him with enough knowledge of the Memphis medical community for him to know the standard of acceptable professional practice in Memphis. (Id.) Dr. Roberts's deposition contains the following testimony relating to these arguments:

Q: And tell me about the medical community. Do they have a hospital here [in Milledgeville]?

A: Yes.

Q: Where is the hospital?

A: The hospital is Oconee ... Regional Medical Center.

....

Q: And how many beds does that hospital have?

A: It's licensed for 110 beds for acute care and an additional 30 beds for chronic care.

Q: How many surgeons practice at that hospital?

A: We have on our staff approximately 90 active staff physicians. I would guess approximately half of those are surgeons of various specialties.

....

Q: Okay. Where's the nearest tertiary hospital?

A: It's in Macon, Georgia, which is approximately 35 miles away.

Q: And what's the name of that hospital?

A: The Medical Center of Central Georgia.

Q: Do you have privileges there?

*3 A: No.

Q: So I assume you don't practice at that hospital?

A: I do not.

Q: Is the Oconee Hospital a level one trauma center?

A: No.

Q: Is the Macon County Medical Center (sic) a level one trauma center?

A: It is.

Q: Do you consider the Milledgeville community a similar medical community to Memphis, Tennessee?

A: With regards to this particular case, I do.

Q: And why do you consider it to be a similar community?

A: I think Dr. Behrman and I have had similar training. We use similar graft materials, similar techniques.

....

Q: You are basing your similarity with Dr. Behrman and if Dr. Behrman, say, moved to another community in another state wherever that might be, you think you would still be in a similar community because of his practice and his training and the graft materials he uses?

A: I'm saying if Dr. Behrman came to Milledgeville, Georgia, and had a patient similar to Mr. McDaniel, had asked for a graft material of any type it would be available to him. The instruments would be available. The postop care, including ICU, long-term care, acute care, all would be comfortable for him.

Q: Is—and you say comfortable because he can get the same facilities and materials that the Oconee Hospital—

....

A: Yes. And he would have whatever diagnostic modalities he would need as well.

Q: Are you familiar with the Memphis medical community at all?

A: In the city of Memphis?

Q: Yes.

A: No. I've looked at the website for Baptist Memorial. I know they have approximately 650 beds available. They have a few more specialties in surgery than we do, including cardiac surgery, full-time plastic surgery, pediatric surgery. We don't have those, but we have others.

Q: So you would agree looking at the demographic material you did about the Memphis medical community that it is not a similar community based on the demographics?

A: Memphis is larger. Baptist Memorial Hospital is larger. But pertaining to this case, we're equal. We're similar or equal. I'm very confident in that.

Q: So you say because of this procedure that you would do it in a similar way in this community at this as Dr. Behrman would do it in the Memphis community?

A: Yes. Dr. Behrman could do his case here; I could go there and operate on Mr. McDaniel doing the same case.

Q: All right. Do you know any doctors from Memphis, Tennessee?

A: No.

Q: So you don't know any surgeons there?

A: No.

Q: And as far as the Oconee hospital, you said—what specialties do they have here?

A: We don't have cardiac surgery here. We don't have plastic surgery. We don't have pediatric surgery, and we don't have neurosurgery.

Q: And they have all those things at Baptist Hospital in Memphis?

A: Yes.

Q: Are you familiar with the other hospitals in Memphis besides Baptist?

A: No.

Q: So you don't know anything else about the Memphis medical community other than what you looked up about Baptist Hospital?

A: That's right.

(Roberts Dep. 13:2–18, 14:13–18:14, Mar. 13, 2013, ECF. No. 41-1 at 6 to 10, ECF No. 42-2 at 34.)

## II. ANALYSIS

Because this case is before the court pursuant to its diversity jurisdiction, the court will apply Tennessee law to assess "[a] witness's competency regarding a claim or defense for which state law supplies the rule of decision." See Miller v. Chinenye Uchendu, M.D., No. 13-CV-2149-SHL-DKV, 2016 WL 4524306, at *1 (W.D. Tenn. July 21, 2016)(quoting Fed. R. Evid. 601). Tennessee law requires a plaintiff bringing a health care liability action to prove through the testimony of a qualified expert that the defendant violated "[t]he recognized standard of acceptable professional practice ... in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred." T.C.A. § 29-26-115. In federal court, Section 29-26-115 combines with the requirement of Federal Rule of Evidence 702 that expert testimony "help the trier of fact." See Miller, 2016 WL 4524306, at *1 (first quoting United States v. Cunningham, 679 F.3d 355, 379-80 (6th Cir. 2012); and then citing Legg v. Chopra, 286 F.3d 286, 292 (6th Cir. 2002)); see also Shipley, 350 S.W.3d at 550–52 (noting the relationship between § 29-26-115 and Tennessee Rules of Evidence 702 and 703). Thus, to be able to testify, a proposed expert must be familiar with the "standard of care" in the community where the allegedly negligent medical care provider practiced, or a similar community. See Miller, 2016 WL 4524306, at *1. Tennessee courts have referred to this requirement as the " 'locality rule,' codified." Roberts v. Bicknell, 73 S.W.3d 106, 113 (Tenn. Ct. App. 2001).

**\*4** Experts may use two approaches to demonstrate that they meet the locality rule. Under the first approach experts demonstrate that they are familiar with the pertinent standard of care by showing that they are familiar with the medical community in which the allegedly negligent provider practiced at the time of the injury. See Johnson v. Richardson, 337 S.W.3d 816, 820 (Tenn. Ct. App. 2010). Under the second approach experts must show (1) familiarity with a medical community and (2) that the community is similar to the one connected to the case. Id.

UTMG argues that Dr. Roberts does not meet the locality rule under either approach, while the McDaniels argue that, according to Shipley, Dr. Roberts meets the locality rule under both approaches. The court will, therefore, address whether Shipley has "relaxed" the locality rule in the manner that the McDaniels suggest, whether Dr. Roberts has demonstrated that he is familiar with the Memphis medical community, and whether he has demonstrated that he is familiar with a medical community that is similar to Memphis.

### A. Shipley v. Williams

In Shipley, the Tennessee Supreme Court analyzed a twenty-five-year span of Tennessee cases dealing with the locality rule. It then found that courts should not exclude an expert from testifying about "a broader regional standard or a national standard" so long as that testimony is considered as an element of the expert witness's "knowledge of the standard of care in the same or similar community." Shipley, 350 S.W.3d at 553. It also rejected a condition formulated by several Tennessee Court of Appeals cases that called for an expert to have "firsthand and direct knowledge" of a medical community. Id. at 552–53.

Most important to this case, Shipley provided the following guidance for determining whether an expert meets the locality rule:

> The medical expert or experts used by the claimant to satisfy this requirement must demonstrate some familiarity with the medical community in which the defendant practices, or a similar community, in order for the expert's testimony to be admissible under Rules 702 and 703. Generally, a competent expert's testimony that he or she has reviewed and is familiar with pertinent statistical information such as community size, hospital size, the number and type of medical facilities in the community, and medical services or specialized practices available in the area; has had discussions with other medical providers in the pertinent community or a neighboring one regarding the applicable standard of care relevant to the issues presented; or has visited the community or hospital where the defendant practices, will be sufficient to establish the expert's testimony as admissible.

Id. at 554.

With regard to the McDaniels' argument that Shipley relaxed or otherwise lowered the standard for proving what constitutes a similar community, that argument is directly inconsistent with the language of Shipley itself. As the court expressly stated in Shipley, "*Principles of stare decisis compel us* to adhere to the requirement that a medical expert must demonstrate a modicum of familiarity with the medical community in which the defendant practices or a similar community." 350 S.W.3d at 552 (emphasis added). In other words, Shipley did not alter the minimal showing requirement established by the Court's prior decisions. See Meares v. Traylor, No. E2011-02187-COA-R3CV, 2012 WL 3060510, at *4 (Tenn. Ct. App. July 27, 2012) (noting that "the only changes that Shipley made to the existing case law on [the locality rule] had to do with whether an expert could testify to a 'national' standard of care, and also with the 'personal, first-hand knowledge' requirement"); see also Stovall v. Clarke, 113 S.W.3d 715, 723 (Tenn. 2003)(remanding a case because, among other reasons, the excluded expert had demonstrated "*some* underlying basis for his testimony" that he was familiar with the local standard of care)(emphasis added); Carpenter v. Klepper, 205 S.W.3d 474, 480 (Tenn. Ct. App. 2006) ("[T]he locality rule requires an expert to have '*some* knowledge ...' ")(emphasis added); Roberts, 73 S.W.3d at 114 ("The law on expert witnesses, as it exists in Tennessee, requires the expert to have *some* knowledge of the practice of medicine in the community at issue or a similar community."). But see Evans ex rel. Evans v. Williams, No. W2013-02051-COA-R3CV, 2014 WL 2993843, at *8 (Tenn. Ct. App. June 30, 2014) (noting that Shipley "relaxed" the locality rule). Regarding the McDaniels' suggestion that pre-Shipley cases are "outdated case law," this argument is also inconsistent with Shipley as evidenced by the Court's assessment of and reliance upon its prior decisions in analyzing the locality rule.

### B. Whether Dr. Roberts is Familiar With Memphis

**\*5** The McDaniels argue that Dr. Roberts's knowledge of statistical information concerning Memphis and Baptist Memorial Hospital amounts to familiarity with the Memphis medical community. (ECF No. 41 at 6.) As quoted above, in his deposition, Dr. Roberts testified that he looked at the website for Baptist Memorial Hospital, learned the number of beds in the hospital, and learned the number and types of specialties. (Roberts Dep. 16:24–17:4.) He also testified that Memphis is larger than Milledgeville. (Id. at 17:9.) The McDaniels point to Shipley and Evans ex rel. Evans v. Williams to bolster their argument that this testimony provides the "pertinent statistical information" that an expert must show in order to demonstrate familiarity with a medical community. (ECF No. 41 at 7) (first quoting Shipley, 350 S.W.3d at 552–53; and then quoting Evans, 2014 WL 2993843, at *8).

Shipley mentioned three types of evidence that show an expert is familiar with a medical community or a similar community: statistical information, discussions with local medical providers, and visiting the defendant's community. Shipley, 350 S.W.3d at 554. However, Shipley did not specify which type of evidence supports the familiarity approach and which supports the similarity approach. Id. at 554–556.

Prior to Shipley, Tennessee courts have typically treated experts' knowledge of statistical information about the pertinent medical community as evidence necessary for finding *similarity* between two communities, not as evidence of the experts' *familiarity* with the pertinent community. See Kirk v. Chavin, No. E2010-02139-COA-R3CV, 2011 WL 2176406, at *5 (Tenn. Ct. App. June 3, 2011); Johnson, 337 S.W.3d at 821–22; Stanfield v. Neblett, 339 S.W.3d 22, 34–36 (Tenn. Ct. App. 2010); Plunkett v. Bradley-Polk, No. E200800774COAR3CV, 2009 WL 3126265, at *8 (Tenn. Ct. App. Sept. 30, 2009); Farley v. Oak Ridge Med. Imaging, P.C., No. E200801731COAR3CV, 2009 WL 2474742, at *12 (Tenn. Ct. App. Aug. 13, 2009); Nabors v. Adams, No. W200802418COAR3CV, 2009 WL 2182386, at *5–*6 (Tenn. Ct. App. July 23, 2009); Taylor ex rel. Gneiwek v. Jackson-Madison Cty. Gen. Hosp. Dist., 231 S.W.3d 361, 369–71 (Tenn. Ct. App. 2006); Carpenter, 205 S.W.3d at 478–80; Travis v. Ferraraccio, No. M2003-00916-COA-R3CV, 2005 WL 2277589, at *12 (Tenn. Ct. App. Sept. 19, 2005); Bravo v. Sumner Reg'l Health Sys., Inc., 148 S.W.3d 357, 369 (Tenn. Ct. App. 2003); Roberts, 73 S.W.3d at 114; Wilson v. Patterson, 73 S.W.3d 95, 98–104 (Tenn. Ct. App. 2001). This court has found only one pre-Shipley case that suggests statistical information might be used to show familiarity. See Stovall, 113 S.W.3d at 723. However, in Stovall, there was other, non-statistical evidence that provided a sufficient basis for finding familiarity with the pertinent medical community. Id. (noting that the expert "testified that he had reviewed over twenty medical charts from the State of Tennessee and had testified in three malpractice cases in the middle Tennessee area"). Moreover, even after Shipley, many Tennessee Court of Appeals cases have continued to treat statistical information as relevant to the similarity approach. See Nevels v. Contarino, No. M2012-00179-COA-R3CV, 2012 WL 5844751, at *6–*7 (Tenn. Ct. App. Nov. 16, 2012); Meares, 2012 WL 3060510, at *6; McDonald v. Shea, No. W2010-02317-COA-R3CV, 2012 WL 504510, at *14–*15 (Tenn. Ct. App. Feb. 16, 2012); Smith v. Mills, No. E2010-01506-COA-R3CV, 2011 WL 4553144, at *7 (Tenn. Ct. App. Oct. 4, 2011). But see Evans, 2014 WL 2993843, at *8; Griffith v. Goryl, 403 S.W.3d 198, 206–11 (Tenn. Ct. App. 2012).

This differentiation between types of evidence is important because the three types of evidence that Shipley described are not necessarily applicable to both approaches. When analyzing whether two medical communities are similar, courts assess the experts' knowledge of "pertinent statistical information such as community size, hospital size, the number and type of medical facilities in the community, and medical services or specialized practices available in the area." Shipley, 350 S.W.3d at 554. This information substitutes for knowledge of the standard of care in the pertinent medical community. In other words, if experts know the standard of care in community A, but not in community B, then their knowledge that the two communities share similar demographics and statistics equips them to opine on how community B has the same standard of care as community A. Thus, the court will treat Dr. Roberts's knowledge of statistical information as relevant to determining the similarity between Memphis and Milledgeville but not as evidence of Dr. Roberts's familiarity with the standard of care in Memphis's medical community. See Sutphin v. Platt, 720 S.W.2d 455, 457 (Tenn. 1986) (noting that the standard of care deals with the "customs or practices of physicians from a particular geographic region") (citing Joseph H. King, The Standard of Care and Informed Consent Under the Tennessee Malpractice Act, 44 Tenn.L.Rev. 225, 256 (1977)).

*6 Here, the McDaniels only provide Dr. Roberts's knowledge of certain statistical facts about Memphis and Baptist Memorial Hospital to support their argument that the court should admit his testimony under the familiarity approach. They have not provided any evidence that Dr. Roberts is familiar with the customs or practices that make up the standard of care in Memphis. Indeed, Dr. Roberts's testimony indicates he is not familiar with these customs or practices. During his deposition, he testified that he had never visited Memphis, did not know any doctors from Memphis, was not familiar with any hospitals in Memphis other than looking up the Baptist Memorial Hospital website, and was not familiar with the Memphis medical community. (Roberts Dep. 11:24–25, 16:20–24, 17:20–18:14.) Therefore, the court finds that Dr. Roberts's testimony is not admissible under the familiarity approach to the locality rule and will next consider if it is admissible under the similarity approach.[1] See Sommer v. Davis, 317 F.3d 686, 694 (6th Cir. 2003) (affirming the exclusion of an expert who had admitted that "he did not 'know any of the characteristics of the [pertinent] medical community' ").

### C. Whether Dr. Roberts is Familiar With a Community That is Similar to Memphis

The McDaniels' first similarity argument is that Milledgeville is similar Memphis, because Dr. Roberts testified that Milledgeville and Dyersburg are similar and Dr. Behrman testified Dyersburg and Memphis are similar. The court has found no Tennessee case that has allowed experts who are familiar with communities A and B to admit that they know little about community C and rely, nonetheless, upon testimony from the opposing party to bridge the community-B-to-community-C gap. The court need not reach this issue because, in order for the McDaniels to rely on Dr. Behrman's testimony in this manner, there must be evidence that Dr. Behrman is sufficiently familiar with the standard of care in Dyersburg for him to be able to compare it to the standard of care in Memphis. The court finds, for the reasons given below, that Dr. Behrman has not shown such familiarity.

In the excerpts of Dr. Behrman's deposition testimony that the McDaniels provided to the court, Dr. Behrman made three key points about his knowledge of the standard of care in Dyersburg. First, he agreed that his surgeon acquaintances in Dyersburg, Jackson, Nashville, Georgia, and Missouri employed similar "surgical practices" to his own. (Behrman Dep. 19:16–20:11.) Second, he testified that he believes there is a national standard of care for ventral hernia repairs. (Id. at 20:17–19, 92:20–94:17) Finally, he was asked, "[I]n talking to surgeons in Dyersburg or Jackson, you don't think the standard of care for ventral hernia repairs there is any different than it is in Memphis?" He responded that he thought the standard of care "would be similar" to the one in Memphis.

Shipley may have stated that conversations with local providers about "the applicable standard of care relevant to the issues presented," are "[g]enerally ... sufficient to establish the expert's testimony as admissible." 350 S.W.3d at 554. But, Dr. Behrman's testimony on his familiarity with Dyersburg does not reach the basic level of familiarity that the locality rule requires. All the court knows is that Dr. Behrman had conversations with surgeons, who may have been from Dyersburg or Jackson, about matters that led Dr. Behrman to think that the standard of care for ventral hernia repairs in Dyersburg and/or Jackson "would be similar" to the standard in Memphis. Dr. Behrman provided no explanation as to why those conversations persuaded him to think Dyersburg and Memphis share similar standards of care. Without this information, the court will not deem his conclusion a sound one. See Johnson, 337 S.W.3d at 822–23 (affirming the exclusion of an expert who had asserted that two communities were similar based upon medical records from the pertinent community but who had not explained the number, content, or significance of the records).

*7 Aside from these conversations, the only concrete basis Dr. Behrman provided for his conclusion that Dyersburg and Memphis share a standard of care was his belief that these communities, and other small communities like Franklin County, are governed by a national standard care. While testimony about a national standard of care may be one of the facts supporting the determination that an expert meets the locality rule, it may not be the only one. See Shipley, 350 S.W.3d at 553. As a result, Dr. Behrman's testimony did not provide a sufficient foundation for his belief that Memphis and Dyersburg have similar standards of care. Thus, the court finds that his testimony cannot provide the basis for Dr. Roberts's claim that Milledgeville and Memphis are similar.[2]

The McDaniels' second similarity argument is that Dr. Roberts demonstrated similarity between Milledgeville and Memphis through his testimony about the similarities between Oconee Regional Medical Center and Baptist Memorial Hospital. When describing Oconee Regional Medical Center, Dr. Roberts observed that it has "110 beds for acute care and an additional 30 beds for chronic care," is not a tertiary hospital, and does not have a level one trauma center. (Roberts Dep. 13:14–15:1.) He described Baptist Memorial Hospital as having "approximately 650 beds available," and four more specialties than Oconee Regional Medical Center. (Id. at 16:21–17:4, 18:2–7.)

The McDaniels have not provided, and this court has not found, a single case in which a Tennessee court has determined that two medical communities were similar based purely upon similarities between two hospitals. There is good reason for the dearth of such case law. Finding similarities between two communities involves comparing "community size, hospital size, the number and type of medical facilities in the community, and medical services or specialized practices available in the area." See Shipley 350 S.W.3d at 554. Two hospitals do

not two communities make. See Sommer, 317 F.3d at 694–95 (affirming the exclusion of an expert who stated that two communities were similar because they both had elite medical schools); Johnson, 337 S.W.3d at 822 ("[T]he mere fact that both communities had outlying hospitals is insufficient on its own to establish that the two communities were similar."). Thus, the court finds that Dr. Roberts's testimony is not admissible under the similarity approach.

### III. CONCLUSION

For the foregoing reasons, UTMG's motion to exclude the testimony of Dr. Roberts is GRANTED.[3]

*8 IT IS SO ORDERED.

**All Citations**

Slip Copy, 2018 WL 795506

Footnotes
1   There are any number of additional steps that experts might take to familiarize themselves with the standard of care in a specific medical community—including reviewing medical charts, Stovall, 113 S.W.3d at 723, studying the records and recommendations for treatment for referrals from the local community, Ledford v. Moskowitz, 742 S.W.2d 645, 648 (Tenn. Ct. App. 1987), and even observing the depositions and testimony of local physicians in other cases, Wilson, 73 S.W.3d at 99–100. No such evidence has been provided concerning Dr. Roberts.
2   To the extent the McDaniels argue for similarity based upon Dr. Behrman's testimony regarding the similarities between the Memphis medical community and several smaller communities, the court views this argument as no different from arguing for reliance solely upon a national standard of care.
3   The court notes that several courts and commentators have widely criticized this rule as inflexible and outdated and have advocated for the legislature to reform the law to reflect modern developments in medicine. See Shipley, 350 S.W.3d at 538 n.7 (collecting cases and articles). As the Sixth Circuit observed in Brown v. United States, 355 Fed.Appx. 901, 907 n.1 (6th Cir. 2009),

> The Tennessee Supreme Court also noted its discontent with the locality rule as a whole and suggested to the General Assembly that it be changed to account for the fact that national norms, especially with respect to specialized procedures such as the one in question here, are often representative of the local norms. Robinson v. Le Corps, 83 S.W.3d 718, 724 (Tenn. 2002). We agree with the Tennessee Supreme Court and also encourage the General Assembly to address this issue. However, we are not only bound, as was the Tennessee Supreme Court, by the existing statute but are also bound by the Tennessee Supreme Court's interpretation of the locality rule provided in Robinson.

**End of Document**                © 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.    8