# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JOHN RUFFINO and MARTHA RUFFINO, Husband and Wife, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE No. 3:17-cv-00725 ) Judge Campbell ) Magistrate Judge Newbern |
| DR. CLARK ARCHER and HCA HEALTH SERVICES OF TENNESSEE, INC. d/b/a STONECREST MEDICAL CENTER | ) ) JURY DEMANDED ) ) ) |
| Defendants. | ) ) ) |

## DR. ARCHER'S MOTION IN *LIMINE* NO. 5 TO EXCLUDE TESTIMONY, EVIDENCE, AND/OR ARGUMENT ON "BILLED" OR "CHARGED" AMOUNT OF MEDICAL BILLS, THE REASONABLENESS AND NECESSITY OF MEDICAL BILLS, AND FUTURE MEDICAL CARE AND TREATMENT TO A REASONABLE DEGREE OF MEDICAL CERTAINTY

COMES NOW Defendant, Dr. Clark Archer (hereinafter "Dr. Archer") and respectfully moves the Court in *limine* for an Order: (1) limiting the Plaintiffs' proof regarding medical expenses to the actual economic losses suffered and thus excluding evidence of unadjusted medical bills or expenses that were never paid, (2) prohibiting the Plaintiffs from offering any testimony or argument on the reasonableness and necessity of medical expenses where Plaintiffs have failed to identify an expert on these issues; and (3) prohibiting the Plaintiffs from offering any testimony or argument on future medical care and treatment, along with the reasonableness and necessity of any future medical expenses associated with future care and treatment

1

## I. Evidence, testimony, or argument concerning recovery of the "billed amounts" or "charge amounts" of medical bills should be excluded.

Pursuant to the Tennessee Health Care Liability Act, a plaintiff's recovery in a health care liability action is limited to "actual economic losses." This statute, which abrogated the traditional collateral source rule in Tennessee,[1] is codified at Tenn. Code Ann. §29-26-119, and provides in pertinent part:

> In a health care liability action in which liability is admitted or established, the damages awarded may include (in addition to other elements of damages authorized by law) **actual economic losses** suffered by the claimant by reason of the personal injury including, but not limited to cost of **reasonable and necessary** medical care, rehabilitation services, and custodial care, loss of services and loss of earned income, **but only to the extent that such costs are not paid or payable and such losses are not replaced, or indemnified in whole or in part**, by insurance provided by an employer either governmental or private, by social security benefits, service benefit programs, unemployment benefits, or any other source except the assets of the claimants or of the members of the claimant's immediate family and insurance purchased in whole or in part, privately and individually.[2]

The plain language of this statute prevents the Plaintiffs from introducing proof of medical expenses that were paid or are payable by the sources identified above: insurance provided by an employer, either governmental or private, by social security benefits, service benefit programs, or by unemployment benefits—to the extent that the Plaintiffs have not purchased such policies or are responsible for repayment.[3] Essentially, this statute prohibits the Plaintiffs from introducing proof of medical expenses that were paid in full by a policy or benefit for which they had no financial investment or interest in, and which they are not obligated to repay. Accordingly, any medical expenses incurred by the Plaintiffs, which were paid by in part or in full by the sources

---

[1] *Dedmon v. Steelman*, 535 S.W.3d 431, 445-46 (Tenn. 2017).
[2] TENN. CODE ANN. §29-26-119 (**emphasis** added) (2018).
[3] *Id.*

2

identified in the statute and not by a policy purchased by the Plaintiffs or were not paid with the Plaintiffs' (or immediate family's) assets, must be excluded.

Additionally, in limiting the Plaintiffs' recovery in this action to "actual economic losses," this statute raises the issue of whether the amount of "billed" medical expenses represents an "actual economic loss" suffered by the Plaintiffs. The award of compensatory damages in any personal injury case is to "compensate [a plaintiff] for the loss [he/she] sustained."[4] Tennessee courts have consistently held that tort damages are awarded "to repair the wronged party's injury or, at least, to make the wronged party whole as nearly as may be done by an award of money."[5] Among the categories of damages that can be awarded in a health care liability action is the "cost of reasonable and necessary medical care."[6] "An injured plaintiff bears the burden of proving that medical expenses the plaintiff is seeking to recover are necessary and reasonable," and to carry this burden, a plaintiff must present competent expert testimony.[7]

However, permitting a plaintiff to recover the "unadjusted"/"non-discounted"/"billed" medical expenses that have never been incurred or paid by the plaintiff, and requiring the jury to disregard the fact that services provided in the medical bills were actually provided at a significantly lower rate, offends the very meanings of "compensatory damages" and "reasonable medical expenses." This is because the "non-discounted" or "unadjusted" or "billed" rate is not an "expense," as it is never incurred by the patient/plaintiff.

Further, although *Dedmon v. Steelman*, 535 S.W.3d 431, 466 (Tenn. 2017) has already held that plaintiffs in personal injury actions may use their full bills to assist in establishing the

---

[4] *Inland Container Corp. v. March*, 529 S.W.2d 43, 44 (Tenn. 1975).

[5] *Overstreet v. Shoney's, Inc*., 4 S.W.3d 694, 703 (Tenn. 1999).

[6] TENN. CODE ANN. §29-26-116 (2016).

[7] *Borner v. Autry*, 284 S.W.3d 216, 218 (Tenn. 2009); *see Dedmon v. Steelman*, 535 S.W.3d 431, 438 (Tenn. 2017) (quoting *Borner v. Autry*).

3

reasonableness of their medical expenses, the court in *Dedmon* expressly excluded health care liability actions from its holding. *Id*. at we 454 n.25 (noting that the collateral source rule was abrogated in health care liability actions and not at issue in the appeal). Therefore, *Dedmon* is inapplicable to the instant case to the extent it permits the introduction of billed amount of medical bills and does not limit recovery to paid or payable amounts. Instead, as other district courts in Tennessee that have considered this exact issue and held, this Court should limit the evidence to the amount paid or payable.[8]

**II. Plaintiffs cannot offer any evidence, testimony, or argument that the medical bills, past or future, for which recovery is sought are reasonable and/or necessary as required by Tennessee law.**

Plaintiffs have not disclosed any expert testimony concerning the reasonableness and necessity of John Ruffino's past medical bills, which is required by Tennessee law, and therefore, the Court should exclude all evidence, testimony, or argument concerning the Mr. Ruffino's past medical bills. Among the categories of damages that can be awarded in a health care liability action is the "cost of reasonable and necessary medical care."[9] "An injured plaintiff bears the burden of proving that medical expenses the plaintiff is seeking to recover are necessary and reasonable."[10] Tennessee courts require a plaintiff to present expert testimony to satisfy this burden.[11] To satisfy this burden and ensure the physician is qualified:

---

[8] *Nalawagan v. Dang*, No. 06-2745-STA-DKV, 2010 WL 4340797, at *3 (W.D. Tenn. Oct. 27, 2010) (Based on the plain meaning of these terms, it is clear that medical expenses are limited to expenses already paid or such expenses yet to be paid, and not simply the amounts billed; *See Calaway ex rel. Calaway v. Schucker*, No. 2:02-CV-02715-STA, 2013 WL 960495, at *4 (W.D. Tenn. Mar. 12, 2013) (subsequent history omitted) (applying *Nalawagan* to private insurance and not just Medicaid); *Guthrie v. Ball*, No. 1:11-CV-333-SKL, 2014 WL 5094140, at *2 (E.D. Tenn. Oct. 10, 2014). *See also Calaway v. Schucker*, No. 202CV02715STACGC, 2013 WL 12033182, at *1 (W.D. Tenn. Aug. 12, 2013) (correcting typo). Copies of these cases are attached as **Collective Exhibit 1**.

[9] TENN. CODE ANN. §29-26-116 (2018).

[10] *Borner*, 284 S.W.3d at 218; *see Dedmon*, 535 S.W.3d at 438 (quoting *Borner*).

[11] *Long v. Mattingly,* 797 S.W.2d 889, 892-94 (Tenn. Ct. App. 1990); *see also Dedmon*, 535 S.W.3d at 438 (citing *Borner*, 284 S.W.3d at 218); *see also Adams v. Farbota*, 306 F.R.D. 563, 570 (M.D. Tenn. 2015) ("Under Tennessee law, a plaintiff seeking to recover past medical expenses must present expert testimony to prove (1) that

4

> [T]he physician must first demonstrate (1) knowledge of the party's condition, (2) knowledge of the treatment the party received, (3) knowledge of the customary treatment options for the condition in the medical community where the treatment was rendered, and (4) knowledge of the customary charges for the treatment.

*Dedmon*, 535 S.W.3d at 438 (quoting *Long*, 797 S.W.2d at 893).

Additionally, pursuant to Rule 26 of the Federal Rule of Civil Procedure, a party is to provide an expert report for each of its experts that contains "a complete statement of all opinions the witness will express and the basis and reasons for them." Parties also have a duty to supplement their expert disclosures pursuant to Rule 26(e), and when they fail to do so, Rule 37(c) provides that "the party is not allowed to use that information or witness to supply evidence. . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 26; 37. "[A] 'report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.' " *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir. 1998)). Additionally, compliance with Rule 26(a) is required and a failure to comply with it mandates a district court punish a party for discovery violations in connection with Rule 26 absent harmless or substantially justified violations. *U.S. ex rel. Tennessee Valley Auth. v. 1.72 Acres of Land In Tennessee*, 821 F.3d 742, 752 (6th Cir. 2016). To determine whether there is substantial justification for failing to supplement or provide the requisite information, a court is to examine the following factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the

---

his past medical expenses were reasonable and necessary and (2) that the injury was, in fact, caused by the incident at issue.").

> importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (citations omitted)

In the present case, plaintiffs have disclosed no medical expert to testify as to the reasonableness and the necessity of the medical expenses for which they seek recovery. This case, in particular, requires compliance since Mr. Ruffino had a complicated presentation following his care at StoneCrest. Plaintiffs must present expert testimony about the reasonableness and necessity of Mr. Ruffino's medical bills and expenses. Yet, they have failed to do so. Dr. Pope's Rule 26 Report indicates he was only asked to offer opinions about the applicable standard of care, whether a deviation occurred, and causation.[12] Nowhere in his report does he offer an opinion about Mr. Ruffino's medical bills. Further, during deposition, Dr. Pope testified to the following:

> Q. Have you reviewed any of Mr. Ruffino's medical bills in this case?
>
> A. I may have received them, but certainly not reviewed them. I would have skimmed right past them.
>
> Q. There's no opinions in your report about the reasonableness of the charges associated with his care?
>
> A. No.
>
> Q. And you're not going to be providing any those types of opinions in this case?
>
> A. Correct.
>
> Q. To be precise, you will not be providing any opinions about the necessity of the care provided to Mr. Ruffino that are reflected on the medical bills?
>
> A. Well -- well, yes, correct.

---

[12] *See* Dr. Troy Pope's Rule 26 Report, at 3 of 35. A complete copy of this report will be filed pursuant to a separate Notice of Filing.

> Q. And you won't be testifying about the reasonableness of those charges either?
>
> A. Correct.[13]

As demonstrated by Dr. Pope's report and the above testimony, Dr. Pope, Plaintiffs' only emergency room physician expert, has not disclosed an opinion regarding the reasonableness and/or necessity of the medical bills allegedly incurred by Plaintiffs.

Further still, Dr. Rajat Dhar's Rule 26 Expert Report does not indicate that Dr. Dhar, a neurologist, reviewed any of Mr. Ruffino's medical bills, much less was going to offer an opinion on Mr. Ruffino's past medical bills.[14] Dr. Dhar did not offer any testimony during his deposition regarding Mr. Ruffino's medical bills.[15] Similarly, Dr. Callahan's Rule 26 Report does not indicate that he would be offering an opinion as to Mr. Ruffino's medical bills.[16] Dr. Callahan's report contains two (2) opinions, each related to causation issues in this case, and the report indicates that Dr. Callahan never reviewed Mr. Ruffino's medical bills.[17]

Now, it is too late to supplement Plaintiff's Rule 26 Reports and/or permit Plaintiffs' expert to offer new opinions on the reasonableness and necessity of Mr. Ruffino's medical bills. Addressing the elements set forth by the Sixth Circuit, first, Defendant would be taken by surprise at this phase of the case given that there is less than a month until trial. Second, Plaintiffs cannot cure this omission at this stage of the case as it would require additional expert disclosures,

---

[13] Deposition Transcript of Dr. Troy Travis Pope from March 23, 2018, at 102:18 – 103:9. A complete copy of this transcript will be filed pursuant to a separate Notice of Filing.

[14] *See* Dr. Rajat Dhar's Rule 26 Report. A complete copy of this report will be filed pursuant to a separate Notice of Filing.

[15] *See generally* Transcript of Deposition of Rajat Dhar, M.D., on April 17, 2018 ("Dr. Dhar's Depo.") (providing no testimony on reviewing medical bills). A complete copy of this transcript will be filed pursuant to a separate Notice of Filing.

[16] *See* Dr. Alfred Callahan's Rule 26 Report. A complete copy of this report will be filed pursuant to a separate Notice of Filing.

[17] *Id.*

depositions, and counter disclosures and expert testimony. Third, to permit an opinion on the medical bills, which would be necessary before they can be admitted into evidence, would require moving the trial date, and even if the trial date could be salvaged, then the trial itself would be disrupted by the presentation of medical expenses. Additionally, as there are no certified medical bills, a records custodian will be required to authenticate any medical bills before an opinion regarding reasonableness and necessity could be provided. Fourth, although this evidence would likely be important to the Plaintiffs' recovery of economic damages, it only concerns one type of economic damages and does not impact Plaintiffs non-economic damages. Finally, counsel cannot speculate at this time on the explanation for the failure other than to note that this requirement for Tennessee health care liability actions is a longstanding requirement. Plaintiffs have consequently failed to present expert testimony that the medical expenses for which they seek reimbursement were reasonable and necessary; thus, they should be barred from admitting into evidence or making any reference to any hospital, medical, or other health-related bills or expenses associated with the care or treatment of John Ruffino.[18]

### III. Plaintiffs cannot offer any evidence, testimony, or argument that future medical bills or expenses and/or care and treatment are reasonably certain to a reasonable degree of medical certainty.

Similarly, all evidence, testimony, and argument regarding future medical care and treatment, along with the costs associated with any future care and treatment, should be excluded by this Court. Plaintiffs have not disclosed an expert to testify about future care and treatment and/or any associated future medical expenses or bills, and therefore, any evidence, testimony, or argument concerning future care and treatment including future medical bills or expenses, should be excluded. This Court has recently held:

---

[18] *See Adams*, 306 F.R.D. at 573.

> In Tennessee, "persons seeking future medical expenses must present evidence (1) that additional medical treatment is reasonably certain to be required in the future and (2) that will enable the trier-of-fact to reasonably estimate the cost of the expected treatment." *Singh v. Larry Fowler Trucking, Inc.*, 390 S.W.3d 280, 287 (Tenn. Ct. App. 2012). Thus, "the standard for receiving medical evidence of future medical treatment or expense must be based upon a reasonable degree of medical certainty." *Lemmons v. Marien*, 1988 WL 55016, at *2 (Tenn. Ct. App. June 3, 1988) (citing *Kincaid v. Lyerla*, 680 S.W.2d 471 (Tenn. Ct. App. 1984)).

*Adam*, 306 F.R.D. at 570; *see also Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 267 (Tenn. 2015); *Potts v. Celotex Corp.*, 796 S.W.2d 678, 681 (Tenn. 1990).

In the present case, none of Plaintiffs' experts have disclosed an opinion in their reports about future care and treatment, much less the costs or expenses that will be associated with such care and treatment.[19] Therefore, the failure to disclose an expert opinion on these issues requires that the Court exclude any new opinions now. Further, even if the Court does not exclude these opinions on the basis of the failure of Plaintiffs to disclose them in accordance with Rule 26(a) of the Federal Rules of Evidence, Plaintiffs' experts have failed to offer an opinion during their depositions. Dr. Pope's testimony as set forth previously indicates that he is not offering opinions regarding reasonableness or necessity of medical bills.[20] Similarly, when questioned about examining Mr. Ruffino in person, Dr. Dhar testified that he had not examined Mr. Ruffino and that it would not assist him with his opinions.[21] Likewise, Dr. Callahan testified that he is not going to determine the degree of function or dysfunction that Mr. Ruffino is experiencing. More specifically, he set forth in his testimony the following:

> Q. Okay. Have you examined Mr. Ruffino?

---

[19] *See U.S. ex rel. Tennessee Valley Auth.*, 821 F.3d at 752 (noting that Fed. R. Civ. P. 37(c)(1) "requires absolute compliance with Rule 26(a)" and that it mandates a district court punish a party for discovery violations in connection with Rule 26, absent harmless or substantially justified violations).

[20] Dr. Pope's Depo. at 102:18 – 103:9.

[21] Dr. Dhar's Depo., at 13:20 – 14:9.

9

A. No.

Q. Do you think any benefit would be served at all by you examining him?

A. Not for him.

Q. Do you consider your undertaking in this case to determine his degree of function or dysfunction? Have you been asked to do that?

A. No, I haven't.

Q. So you're not going to be in a position to say that he's got this degree of permanent impairment or that degree of disability without -- well, based on the information you have, are you?

A. It would require more data.

Q. And an examination, wouldn't it?

A. By someone.

Q. How about you? Before you could offer an opinion that he has some degree of impairment or disability, that he is permanently limited, wouldn't you have to examine him?

A. No. Someone -- one of my colleagues could examine him and render an opinion that, if I read it, I would be satisfied with what they said.

Q. Well, have any of your colleagues examined him, rendered an opinion, and sent the materials to you for the purposes of you forming an opinion about his degree of impairment or disability?

A. No.

Q. Have you spoken with Ruffino?

A. No.

Q. Have you requested the opportunity to do so?

A. No.[22]

---

[22] Deposition of Alfred S. Callahan, III, M.D., on April 10, 2018, ("Dr. Callahan Depo."), at 43:21 – 45:9. A complete copy of this transcript will be filed pursuant to a separate Notice of Filing.

As these exchanges make clear, Plaintiffs' experts have not disclosed an opinion regarding future care and treatment or the associated costs or expense that would be incurred. Without an examination or another opinion on Mr. Ruffino's impairment or dysfunction, any opinion on future care and treatment would be speculative at best. Likewise, Plaintiffs' experts have offered no opinions on the means or methods to employ that would enable the trier-of-fact to reasonably estimate the cost of any future care and/or treatment. To permit an such opinions now would severely prejudice Dr. Archer in being able to test the opinion or counter the opinion right before trial.

Returning to the factors articulated in *Howe*,[23] which are required to evaluate harmless or substantially justified Rule 26(a) violations, first, the surprise to Defendant would be even greater than the surprise of the past medical bills and testimony regarding them since Defendant has no basis by which to explore or impeach the testimony. Second, Plaintiffs cannot cure this surprise at this late stage of the case. Third, this evidence would likely disrupt the trial date, and even if trial could begin when scheduled after accommodating additional disclosures and expert depositions, there would be multiple disruptions due the need for additional *Daubert* hearings in *limine*. Fourth, to the extent that expert testimony was important, Plaintiffs have had ample time to secure and disclose a medical expert qualified to render such an opinion during the deadlines jointly set by the parties and encompassed in the Court's Order, and they haven't. Finally, in similar manner, this requirement is not the result of some new law or interpretation of the law and has been around for some time. Therefore, because Plaintiffs have not disclosed an expert opinion in accordance with Rule 26 who can testify to a reasonable degree of medical certainty that Mr. Ruffino will require future medical care and treatment along with the expenses and costs associated

---

[23] *Howe*, 801 F.3d at 748.

11

Case 3:17-cv-00725   Document 120   Filed 12/14/18   Page 11 of 13 PageID #: 1669

with that future care and treatment, the Court should bar any evidence, testimony, or argument concerning future care and treatment along with the associated future costs.

## **CONCLUSION**

For the foregoing reasons, Dr. Archer respectfully requests that this Court enter an Order excluding evidence, testimony, or argument on: (1) the billed or charged amount of the medical bills, (2) the reasonableness and necessity of John Ruffino's past medical bills, and/or (3) that John Ruffino will require future medical bills to a reasonable degree of medical certainty.

Respectfully submitted on this 14th day of December 2018.

**HALL BOOTH SMITH, P.C.**

By: /s/ Bryant C. Witt
James E. Looper, Jr. BPR #025200
Bryant C. Witt, BRP #018295
Fifth Third Center
424 Church St., Ste. 2950
Nashville, TN 37219
(615) 313-9911
*Counsel for Defendant Dr. Clark Archer*

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document has been furnished by electronic means via the Court's electronic filing system, this 14th day of December 2018, to counsel of record as follows:

Afsoon Hagh, Esq.
CUMMINGS MANOOKIAN PLC
45 Music Square West Nashville, TN 37203
afsoon@cummingsmanookian.com

Brian Cummings, Esq.
Cummings Law
4235 Hillsboro Pike #300
Nashville TN 37215
T: 615.800.6822
F: 615.815.1876
brian@cummingsinjurylaw.com

Mark Hammervold, Esq.
Hammervold, PLC
315 Deaderick Street, Suite 1550
Nashville, TN 37238
mark@hammervoldlaw.com

*Counsel for Plaintiffs, John Ruffino and Martha Ruffino,*

                                      HALL BOOTH SMITH

                                      By:   /s/ Bryant C. Witt