## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| JOHN RUFFINO and MARTHA RUFFINO, Husband and Wife, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) CASE No. 3:17-cv-00725<br>) Judge Campbell<br>) Magistrate Judge Newbern |
| DR. CLARK ARCHER and HCA HEALTH SERVICES OF TENNESSEE, INC. d/b/a STONECREST MEDICAL CENTER | )<br>) JURY DEMANDED<br>)<br>)<br>) |
| Defendants. | )<br>) |

## DR. ARCHER'S MOTION IN *LIMINE* NO. 7 TO EXCLUDE MARTHA RUFFINO'S HANDWRITTEN NOTE AS HEARSAY

COMES NOW Defendant, Dr. Clark Archer (hereinafter "Dr. Archer" or "Defendant") and respectfully moves the Court in *limine* for an Order excluding Martha Ruffino's handwritten note that was produced during discovery. For grounds, it is inadmissible hearsay, and there is no exception that would warrant its admission into evidence.

Pursuant to Rule 801 of the Federal Rules of Evidence, Mrs. Ruffino's handwritten note[1] is an out-of-court statement that would be offered in evidence to prove the truth of the matter asserted. The note purports to be written on February 17, 2016, while at Stonecrest. Further it is being offered for to establish what happened prior to Mr. Ruffino's presentation at StoneCrest, what happened during his presentation at StoneCrest, what the health care providers (unidentified doctors and nurses) said during his presentation at StoneCrest, during his first presentation to

---

[1] A copy is attached hereto as **Exhibit A.**

1

Centennial Medical Center, what Dr. Valdivia said during the first presentation to Centennial Medical Center, and that Dr. Archer and/or StoneCrest could have done something to help Mr. Ruffino while Mr. Ruffino was at StoneCrest. In accordance with Rule 802 of the Federal Rules of Evidence, as hearsay, the note is not admissible.

     Before examining whether any exceptions may justify admitting the note into evidence (assuming proper foundation and authentication), the circumstances surrounding the creation of the note should be examined. During Mrs. Ruffino's deposition, she testified to the following:

> Q. Okay. Now, did you make any notes of what was going on while you were at StoneCrest?
>
> A. While I was at Centennial.
>
> Q. I didn't ask you about Centennial. I asked you, did you make any notes while things were going on while you were at StoneCrest?
>
> A. No.
>
> Q. When did you start making notes at Centennial? What day was it?
>
> A. The evening of 2017. February 17, two-thousand - -
>
> Q. That night you started making notes?
>
> A. Yes.
>
> Q. Where are all those notes?
>
> A. I have them at home.
>
> Q. Okay. Did you later take the notes and put them together in this two and a quarter page summary?
>
> A. Yeah.
>
> Q. Okay. Did you tell your lawyers that you had all these original notes at home?
>
> A. Yeah.

2

Q. Okay. Let's take an inventory. How many original notes are there?· How many pages?

A. I don't know.

Q. Estimate it for me so that we can have some idea of how burdensome it would be to get them together.

A. Ten.

Q. Ten or fifteen maybe?

A. Maybe.

Q. Have you lost or altered any of those 10 or 15 pages?

A. No.

Q. Have you added to them at all since the night of February 17? Filled them in?

A. I don't know.

Q. Well, the question's very direct and I want a direct answer. At any time since February 17, 2016, have you filled in any of those notes or completed any of the thoughts on those notes?

A. Yes.

Q. When did you start doing that?

A. I wrote down all the stuff that was going on when I was sitting at Centennial, and then I just rewrote them basically so you could read it.

Q. When? The question is, when did you start filling them in, adding to them, and rewriting them? When did that occur?

A. At the hospital.

Q. When? There were two admissions to Centennial, ma'am. One on February 17 to February 26. Another one - -

A. February 17th.

3

Q. All the rewrites occurred the same day, the 17th of February 2016?

A. I believe so, yes.

Q. And all the ink's the same ink from the same pen?

A. I would believe so.

Q. Would you be surprised and absolutely astounded if they're ever analyzed and somebody says these weren't written at the same time?

A. I'm not quite sure what your - -

Q. Here is the really clear-cut question: Did you add to those notes at any time after February 17, 2016, question?

A. I didn't add to them, no.

Q. Did you rewrite them after - -

A. I rewrote them, yes.

Q. Let me finish my question. Did you rewrite them after February 17, 2016?

A. Yeah.

Q. How many times?

A. Once.

Q. When? When did you rewrite them?

A. I believe that night at the hospital.

Q. Why did you rewrite something the same night?

A. So they were readable. I do that with everything.

Q. Okay. Well, we want the originals that you have at home, all of them, and we'll make those Exhibit 2. So please get those. I'm sorry. Exhibit 3. So please get those and give them to your lawyers.

A. Okay.

Q. Now, when was this document prepared?

A. This was prepared at Centennial Hospital.

Q. When?

A. February 18th, 17th.

Q. Somewhere in that area?

A. Uh-huh.

Q. Yes?

A. Yes.

Q. Why did you write this two and a quarter page summary when you had all those other original notes that you were making?

A. I'm not sure.

Q. Okay.

A. Being at a hospital, you get bored. I was just sitting there and I was writing what was going on.

Q. Well, the first line is not right. You were not sitting at StoneCrest Hospital with your husband, correct, when this was prepared?

A. Not when I actually wrote this exact one, no.

Q. Right. So this very document that is Exhibit 3 - -

[Counsel's Questions about exhibit number and marking the note as Exhibit 4 are omitted]

Q. The one that's in front of you that's a copy of this sheet you prepared begins by saying, "Sitting at StoneCrest Hospital with my husband." That's not truthful, is it? This wasn't written at StoneCrest?

A. This is what I wrote off my notes because that's where I started writing, was at StoneCrest.

Q. This document you just told me you wrote at Centennial on the evening of February 17. Is that true or not?

5

A. That's when I rewrote this here one, off notes.

Q. Okay. So this here one was rewritten at Centennial, correct?

A. Correct.

Q. So the first statement in this document, "sitting at StoneCrest Hospital with my husband" is not accurate, is it?

A. Off my notes, it was.

Q. Was this document written at StoneCrest Hospital?

A. Not this exact one, but it was on my notes when I first started.

Q. I'm not asking you about your notes now. I'm asking you - -

A. Okay. This was at StoneCrest - - Centennial.

Q. Exhibit 4 was written at Centennial?

A. Yes.

Q. It was not written at StoneCrest?

A. Correct.

Q. First sentence in this document is not accurate, correct?

A. Correct.

Q. Now, how about this: Who told you that "He picked up an order from Home Depot in Smyrna. After he left one of the workers from Home Depo called my husband's boss Gordon Lee."? Who gave you that information?

A. My husband.

Q. Okay. "And said something was wrong with John. So Gordon called my husband and told him to pullover." Who was the source of that information?

A. John.

Q. John, your husband?

6

> A. Yes.
>
> Q. "Gordon called the police and they called EMS as soon as they seen my husband."· Your husband was the source of that?
>
> A. Yes.
>
> Q We know today that's not accurate, isn't it? You know that after looking at the EMS records, correct? You know the first people you talked to – you talked to - were actually the police for 16 minutes, correct? Correct?
>
> A. Yeah.[2]

In examining whether the note fits into an exception to hearsay, first, this document is not a present sense impression as it was not created while or immediately after the declarant, Mrs. Ruffino, perceived the events. *See* Fed. R. Evid. 803(1). In some parts of the note, she did not even perceive the events described such as Mr. Ruffino's pre-presentation circumstances. Rather she was recording what her husband told her that someone else told him. This is a classic example of hearsay that cannot be put forth before the jury. Second, this is not a recorded recollection. A record recollection requires a foundation that the declarant knew a matter at one time and now cannot remember it; the recording was made when the matter was fresh in the witness's memory; and it accurately reflects the witness's knowledge. Fed. Rule Evid. 803(5). Here, Mrs. Ruffino made the note after consulting her other notes, ones that have still not been provided, and that were closer in time to the events in question. The re-writing of her one note from a collection of notes indicates a lack of the required temporal relationship required. Also, the handwritten note does not accurately reflect the witness's knowledge as much of the note was established to be incorrect. Even if the note could qualify as a recorded recollection and the proper foundation be lain, it may

---

[2] Deposition of Martha Ruffino, on October 24, 2017, ("Mrs. Ruffino's Depo.") at 54:17 – 61:7. A copy of the full transcript is being filed pursuant to a separate Notice of Filing.

not be entered into evidence unless offered into evidence by Dr. Archer. *See* Fed. R. Evid. 803(5). However, to permit Mrs. Ruffino's recollection to be refreshed would still run afoul of Rule 403 of Federal Rules of Evidence as any probative value would be substantially outweighed, in part, by the danger or prejudice to Dr. Archer (detailed more below regarding hearsay within hearsay) and the danger of misleading the jury or confusing the issues since Mrs. Ruffino did not personally witness many of the events detailed in her note and many portions of the note are a separate source of hearsay since they were relayed to her by another person or persons.

Further, Mrs. Ruffino should be present to testify at trial, and even if she was not, none of the exceptions pursuant to Rule 804 of the Federal Rules of Evidence would permit to the note to be admitted. Further still, as the above cited testimony makes clear, this note does not have any indicia of reliability or equivalent circumstance guarantees of trustworthiness that may permit its admission pursuant to Rule 807 of the Federal Rules of Evidence. *see also United States v. Porter*, 986 F.2d 1014, 1017 (6th Cir. 1993) ("The touchstone for admission of evidence as an exception to the hearsay rule has been the existence of circumstances which attest to its trustworthiness."). Mrs. Ruffino's deposition demonstrates that much of the contents of the note were gathered from other individuals, and the note was cobbled together from other notes that have never been provided. There is no way to tell whether anything was omitted from those original sets of notes.

Additionally, the handwritten note contains hearsay within hearsay. Fed. R. Evid. 805. More specifically, it contains statements recorded by Mrs. Ruffino that someone called Mr. Ruffino's boss to tell the boss that something was wrong with Mr. Ruffino, that the boss called Mr. Ruffino and told him to pull over, that EMS said they thought her husband was having a stroke, that Mr. Ruffino's nurse told her that the hospital was going to discharge Mr. Ruffino, along with other statement attributed to unidentified and identified doctors. Even if the Court were to find that

this note was generally admissible under an exception to the exclusion of hearsay rule, each of these recorded statements from other declarant must also fit into an exception, which they cannot. Because the handwritten note is hearsay and no exception to hearsay would permit it to be introduced into evidence, the Court should exclude it.

## CONCLUSION

For foregoing reasons, Dr. Archer respectfully requests that this Court enter an Order excluding Mrs. Ruffino's handwritten note.

Respectfully submitted on this 14th day of December 2018.

**HALL BOOTH SMITH, P.C.**

By: /s/ Bryant C. Witt
James E. Looper, Jr. BPR #025200
Bryant C. Witt, BRP #018295
Fifth Third Center
424 Church St., Ste. 2950
Nashville, TN 37219
(615) 313-9911
*Counsel for Defendant Dr. Clark Archer*

## **CERTIFICATE OF SERVICE**

   I hereby certify that a true and correct copy of the foregoing document has been furnished by electronic means via the Court's electronic filing system, this 14th day of December 2018, to counsel of record as follows:

Afsoon Hagh, Esq.
CUMMINGS MANOOKIAN PLC
45 Music Square West Nashville, TN 37203
afsoon@cummingsmanookian.com

Brian Cummings, Esq.
Cummings Law
4235 Hillsboro Pike #300
Nashville TN 37215
T: 615.800.6822
F: 615.815.1876
brian@cummingsinjurylaw.com

Mark Hammervold, Esq.
Hammervold, PLC
315 Deaderick Street, Suite 1550
Nashville, TN 37238
mark@hammervoldlaw.com

*Counsel for Plaintiffs, John Ruffino and Martha Ruffino,*

            HALL BOOTH SMITH

            By:  /s/ Bryant C. Witt

10

Case 3:17-cv-00725   Document 122   Filed 12/14/18   Page 10 of 10 PageID #: 1716