UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN RUFFINO and MARTHA RUFFINO, Husband and Wife, ) ) ) | |
| Plaintiffs, ) ) | Civil Action No.: 3:17-cv-00725 |
| v. ) ) | Jury Demand |
| DR. CLARK ARCHER and HCA HEALTH ) SERVICES OF TENNESSEE, INC. d/b/a ) STONECREST MEDICAL CENTER, ) ) | Judge Campbell Magistrate Judge Newbern |
| Defendants. ) | |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION IN LIMINE #2

In his Motion in Limine #2 ("Motion"), Defendant seeks an order excluding the standard of care and causation expert testimony of Rajat Dhar, M.D. For the reasons that follow, Defendant's Motion should be denied.

### I. Dr. Dhar is Statutorily Competent to Provide Expert Testimony in this Health Care Liability Case Per Tenn. Code Ann. § 29-26-115(b).

Defendant first seeks to exclude Dr. Dhar's standard of care testimony pursuant to Tenn. Code Ann. § 29-26-115(b) because Dr. Dhar is a neurologist, rather than an emergency room physician like Dr. Archer. Defendant claims that Dr. Dhar's practice and specialty as a neurologist means his testimony not "relevant to the issues in the case…" Tenn. Code Ann. § 29-26-115(b). This argument has no merit.

Plaintiff has disclosed Dr. Dhar as an expert on both standard of care and causation. Defendant's objections to Dr. Dhar's statutory competence are confined to the standard of care issue. There is no dispute that Dr. Dhar is statutorily competent to opine on the causation issue at trial.

1

With respect to the statutory competency issue raised by the Defendant, Tenn. Code Ann. § 29-26-115(b) only requires that Dr. Dhar's "profession or specialty … make [his] expert testimony <u>relevant</u> to the issues in the case…"[1] Tennessee courts "have recognized on a number of occasions that section 29-26-115 'contains no requirement that the witness practice the same specialty as the defendant.'" *Shipley v. Williams*, 350 S.W.3d 527, 556 (Tenn. 2011) (*quoting Searle v. Bryant*, 713 S.W.2d 62, 65 (Tenn. 1986)).

Regarding the standard of care issue, Tenn. Code Ann. § 29-26-115(b) permits a medical expert to testify so long as that expert is familiar with the standard of care applicable to the defendant through his/her practice and experience. The threshold to demonstrate such familiarity is not particularly high. The seminal Tennessee Supreme Court case on this issue suggests that as long as an expert testifies that he/she is familiar with the applicable standard of care through his/her practice and experience, then he/she may testify to that issue:

> The statute contains no requirement that the witness practice the same specialty as the defendant. The issue at trial was whether the defendant's performance in attempting to prevent the surgical wound infection and in treating it after it developed was negligent. <u>Dr. Stratton stated that he was familiar with the applicable standards of surgeons in the prevention and treatment of surgical wound infections, and his testimony supports that statement. His expert testimony was, therefore, relevant to the issues in the case</u>. For that reason, he was competent to testify as to those standards, even though he was not himself a surgeon.

*Searle,* 713 S.W.2d at 65 (emphasis added).

Defendant cites *Mitchell v. Jackson Clinic* as providing the limit to this principle. In *Mitchell,* the plaintiff attempted to present an emergency room physician expert (a generalist) to testify to the standard of care applicable to a pediatric *specialist*.[2] By that expert's own admission, he had not been involved in the presentation or treatment of children with jaundice – the issue in

---
[1] Emphasis added.
[2] Here, by contrast, Dr. Dhar is a specialist and the Defendant, Dr. Archer, is a *generalist*.

that case – for multiple years. Affirming the trial court's exclusion of that expert, the court explained: "The problem with his qualification to testify in this case is that, <u>by his own admission</u>, he has not practiced in this area in the year preceding the alleged negligent acts at issue in this case." 2013 Tenn. App. LEXIS 240, *26 (Tenn. Ct. App. Apr. 9, 2013) (emphasis added).

Dr. Dhar is clearly statutorily competent to testify on both the standard of care and causation issues. Dr. Dhar is a board-certified, fellowship-trained neurologist.[3] Dr. Dhar was licensed to practice medicine, and practiced his specialty of neurology, in Missouri during the twelve (12) month period immediately prior to February 17, 2016 (the date of the care in question). Dr. Dhar's practice and experience during this time included assessing and treating stroke patients, including patients who had an acute stroke with an onset within 6 hours of his first patient contact.[4]

Dr. Dhar testified that he was familiar the standard of care applicable to Dr. Archer in February 2016 as that standard relates to the issues in this case and he explained the basis for his familiarity with that standard of care as follows:

> Q: So you feel you're qualified to offer opinions regarding the standard of care that applies to an ER physician?
> A: As it relates to obtaining emergent imaging and communicating with other neurologists, for example, I'm very qualified to know what I would expect an ER physician to communicate to a neurologist about the time of onset and to communicate that we need to get an urgent imaging (ph). Those two things I do think I'm very qualified to comment on.
> Q: And why do you think you're qualified to offer opinions regarding the standard of care applicable to a different specialty?
> A: Mainly because, as I said, that is the area where our specialties intersect. I work with a lot of ER physicians. I know what the expectations are, and stroke is managed between the two specialties, and it's very critical that both specialties fulfill their roles, and so I'm aware of their role just as they would be aware of the neurologist's role.
> Q: Even though you haven't consulted with an ER physician on an active case in the ER, by your own testimony, for over 10 years; correct?
> A: But I've been involved in -- correct. I've been involved in hundreds of cases -- when the patients get tPA, they come to the ICU for monitoring, and so that continuum

---

[3] Dr. Dhar's CV is attached hereto as **Exhibit 1**.
[4] Dr. Dhar's Rule 26 Report is attached as **Exhibit 2**.

3

of care is very well known to me because I see hundreds of patients who have that done appropriately -- rapid imaging, good communication of time of onset -- and get tPA.[5]

In contrast to the material facts in *Mitchell,* Dr. Dhar has been involved in been involved in "hundreds of cases" where stroke patients presented, received tPA and imaging, and then came to the ICU for monitoring. Dr. Dhar was admittedly not the ER physician in those cases, but he does not need to be, because he is nonetheless familiar with the standard of care applicable to the emergency physician in this context due to his involvement in the continuum of care and because the care issues in this case involve an "area where [emergency medicine and neurology] specialties intersect."

This case is factually analogous to *Shipley*, where the Tennessee Supreme Court specifically recognized that a physician expert was familiar the standard of care of a different specialty, including because that standard of care issue involved the continuum of care where the specialties of the expert and the defendant intersected. *See Shipley,* 350 S.W.3d at 556-557 (finding that an emergency room physician expert could testify regarding the standard of care required of a surgeon, where the standard of care issue involved the communication and apportionment of responsibility between a surgeon and an emergency room physician).

The Defendant's arguments that Dr. Dhar is not an ER physician, not board-certified in emergency medicine, and that Dr. Dhar works in an ICU rather than an ER, all go to the *credibility* and *weight* of his opinions. None of these attacks on Dr. Dhar's qualifications make his opinions inadmissible. *See Harmon v. Hickman Cmty. Healthcare Servs.*, 2018 Tenn. App. LEXIS 374, *24 (Tenn. Ct. App. Jun. 29, 2018) ("once a determination is made that an expert witness meets the minimum statutory requirements, i.e., practice in a specialty that makes the witnesses testimony

---

[5] Deposition of Dr. Dhar, p. 211:21-212:25, a complete copy of which is attached as **Exhibit 3**.

relevant, "any questions the trial court may have about the extent of the witness's knowledge, skill, experience, training, or education pertain only to the weight of the testimony, not to its admissibility.").

**II.    Dr. Dhar's Testimony is Admissible Per Fed. R. Evid. 702.**

Defendant next seeks to exclude Dr. Dhar's testimony pursuant to Fed. R. Evid. 702 and *Daubert* because – according to the Defendant – Dr. Dhar's testimony is "too unreliable to permit it to be placed before the jury." This argument also lacks merit.

Experts "are permitted wide latitude in their opinions…so long as the expert's opinion has a reliable basis in the knowledge and experience in the discipline." *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000). When determining the admissibility of expert testimony, trial courts look only to the *methodology* of the proposed expert, rather than the *validity* of the ultimate conclusions. *Id.* ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.").

"As a general matter, 'physicians and other medical professionals routinely testify as experts since their specialized knowledge generally helps the jury resolve medical issues.'" *Jahn*, 233 F.3d at 389. *Daubert* exclusion is "rarely justified in cases involving medical experts" because medical experts form their conclusions by applying their education, training, and experience to their review of case materials, such as medical records. *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn, P.C.,* 388 F.3d 976, 982 (6th Cir. 2004). This methodology is sound and is not the type of "junk science" methodology targeted by *Daubert*. *See id.* ("*Daubert*'s role of 'ensuring that the courtroom door remains closed to junk science,' is not served by excluding testimony…that is supported by extensive relevant experience.").

The Defendant argues that Dr. Dhar's testimony is "unreliable" and should be excluded per *Daubert* and Rule 702 for the following reasons:

1. Dr. Dhar did not refer to any published guidelines in creating opinions.
2. Dr. Dhar did not perform any research (of literature) in connection with his review of this case.
3. Dr. Dhar did not base his opinions on published articles.
4. Dr. Dhar did not look at the 2015 American Heart Association updates.
5. Dr. Dhar did not "vet" his opinions with other physicians.

In *Dickenson,* the Sixth Circuit directly held that that Defendant's Arguments #1 through #4 are not grounds to exclude a medical expert. The court expressly instructed that a medical expert need not "demonstrate a familiarity with accepted medical literature or published standards in [an area] of specialization in order for his testimony to be reliable in the sense contemplated by Federal Rule of Evidence 702." 388 F.3d at 980. No such requirement can be imposed because "an expert may be qualified on the basis of [his] experience." *Id.; see Gase v. Marriott,* 558 F.3d 419, 427-428 (6th Cir. 2009) ("*Dickenson* stands for the proposition that a medical doctor is generally competent to testify regarding matters within his or her own professional experience.").

Since an expert may rely on his/her *own* education, training and experience – and need not consult or research literature to provide admissible opinions in a case like this – it also follows that an expert also need not somehow "vet" his opinions with other physicians before they can be presented at trial.

Dr. Dhar's standard of care and causation testimony is based on his education, experience and training as a neurologist, and his practice treating patients like Mr. Ruffino. Dr. Dhar's opinions are based on applying his education, training and experience to his review of the medical records and case materials. [6]

---

[6] This is the same methodology the Defendant's causation experts are using.

Defendant's citation to *Gase v. Marriott* for the principle that "[w]hen…the doctor strays from such professional knowledge, his or her testimony becomes less reliable, and more likely to be excluded under Rule 702" is not applicable to Dr. Dhar's testimony in this case. 558 F.3d 419 at 428. In *Gase,* the plaintiff attempted to present expert testimony from two treating physicians regarding (1) the plaintiff's diagnosis and (2) identification of the exact pesticide chemical the plaintiff was exposed to occasioning the need for medical treatment. *Id.* at 426-428. The court permitted the plaintiff's experts to testify regarding the plaintiff's diagnosis and treatment, but did not allow the plaintiff's experts to testify to the "exact chemical" the plaintiff had been exposed to at the Marriott hotel because "nothing in Dr. DeJonge's or Dr. Natzke's medical expertise would provide a basis to determine the exact chemical Plaintiffs were exposed to at the Marriott hotel." *Id.* at 428. *Gase* is inapposite here because the treatment and prognosis of stroke patients – based on various treatment modalities and timeframes of treatment – is a matter directly within Dr. Dhar's clinical experience because he routinely manages stroke patients like Mr. Ruffino.

### III. Dr. Dhar's Standard of Care Opinions Should Not be Excluded as a Discovery Sanction.

Defendant also seeks to exclude Dr. Dhar's testimony on the standard of care issue as a discovery sanction pursuant to Fed. R. Civ. P. 37(c)(1). This aspect of the Motion should also be denied entirely, or alternatively, the Court should only permit Dr. Dhar to testify *live* at trial (rather than by deposition).

Dr. Dhar's standard of care opinions were included in his Rule 26 Report:

| Deposition Standard of Care Opinion | Corresponding Rule 26 Report Language |
|---|---|
| Dr. Archer should have ordered/considered emergency reperfusion therapy (tPA) and imaging for Mr. Ruffino's stroke. | "It is my opinion that an acute stroke such as this should be triaged as an emergency and necessitates consideration of acute thrombolic and reperfusion therapies. |
| Dr. Archer should have communicated the time of onset of the stroke [at approximately 12:00] to the neurologist Dr. Chitturi. | "Moreover, it is my opinion that the timing of symptom onset during the time period from 1220 to 1300 was not clearly communicated |

7

|   | between healthcare providers, such that the neurologist, Dr. Chitturi believes that the focal neurological deficits (not just the dizziness) had stated that morning and so Mr. Ruffino may have been outside the window for TPA." |
|---|---|

If there is a shortcoming with Dr. Dhar's Rule 26 Report, it is limited to Dr. Dhar not using the specific words "standard of care" when describing what Dr. Archer should have done. Comparing Dr. Dhar's Rule 26 Report and his deposition, Dr. Dhar fairly disclosed the *substance* of his opinions regarding what Dr. Archer *should have done* and *why*. The Defendant was fairly apprised of Dr. Dhar's opinions and had the opportunity to clarify (and did actually clarify) those opinions during Dr. Dhar's deposition.

The Defendant argues that exclusion of Dr. Dhar's standard of care opinions is required because Defense Counsel was "surprised" at Dr. Dhar's deposition by Dr. Dhar's opinions, and Dr. Dhar's deposition "was recorded and may be used against Dr. Archer in the upcoming trial." Defense Counsel should not have been "surprised" that Dr. Dhar's criticisms of the care Dr. Archer provided were standard of care criticisms. Regardless, any "prejudice" that the Defendant claims he will suffer if Dr. Dhar's standard of care testimony is not excluded can be cured by a more appropriate remedy: an order only permitting Dr. Dhar to testify live at trial (rather than through his discovery deposition).

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion should be denied.

**RESPECTFULLY SUBMITTED,**

  s/ Mark Hammervold
**Brian Cummings, #19354**
Cummings Law
4235 Hillsboro Pike, #300
Nashville, TN 37215
Phone: 615-800-6822
Fax: 615-815-1876
brian@cummingsinjurylaw.com

**Mark Hammervold, #31147**
Hammervold, PLC
315 Deaderick Street, Suite 1550
Nashville, TN 37238
(615) 928-2466 (phone)
(615) 928-2264 (fax)
mark@hammervoldlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

     I certify that I served all parties in this matter through counsel of record listed below with the foregoing by CM/ECF on January 2, 2019:

    James E. Looper, Jr.
    Hall Booth Smith, PC
    Fifth Third Center
    424 Church Street, Suite 2950
    Nashville, TN 37219
    (615) 313-9911 (phone)
    (615) 313-8008 (fax)
    jlooper@hallboothsmith.com

    *Counsel for the Defendant*
    *Dr. Clark Archer*

  s/ Mark Hammervold
**Mark Hammervold**